Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| YENNY ELOISA JOSEPH VIZCAIN T/C/C JENNY JOSEPH VIZCAINO<br><br>Recurrida<br><br>V.<br><br>ORIENTAL BANK<br><br>Peticionario | KLCE202500176 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2023CV03115<br><br>Sobre: Despido Injustificado; Represalias |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece Oriental Bank (Oriental o peticionario) en solicitud de que revoquemos una *Resolución* emitida el 10 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[1] En esta, el Foro Primario declaró No Ha Lugar a la solicitud de sentencia sumaria de Oriental para desestimar la *Querella* laboral que presentó Yenny Eloisa Joseph Vizcain t/c/c Jenny Joseph Vizcaino (señora Joseph Vizcain o recurrida) por entender que existían controversias de hechos materiales.

Por los fundamentos que se exponen a continuación, se adelanta la expedición del auto de *certiorari* y la revocación de la determinación recurrida. En consecuencia, se desestima la *Querella* que presentó la señora Joseph Vizcain.

**I.**

Este caso se originó el 3 de octubre de 2023, cuando la señora Joseph Vizcain interpuso una *Querella* contra Oriental por despido

---
[1] Apéndice de *Petición de Certiorari*, Anejo 1, págs. 1-5. Archivada y notificada el 11 de febrero de 2025.

injustificado[2] y represalias[3] mediante el procedimiento sumario dispuesto en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*[4] En esta, alegó que desde agosto de 2005, era empleada remunerada de Oriental sin tiempo determinado, hasta que su patrono la despidió el 24 de julio de 2023.

Según la señora Joseph Vizcain, su despido ocurrió sin justa causa, puesto que no había cometido una falta, era competente en su labor y no tenía constancia de medidas disciplinarias en su expediente. Entre sus alegaciones, alegó que el señor Fernández, presidente de Oriental, tenía pautada una vista en distintas sucursales para mayo de 2022. Planteó que, ante ello, la señora Beatriz Santiago, gerente regional, les indicó a los gerentes de las sucursales que, si el presidente preguntaba sobre alguna situación que requería mejora, los empleados debían responder que todo estaba en orden.

Sin embargo, la recurrida adujo que la gerente de la sucursal de Plaza Las Américas nunca le informó estas instrucciones. Por ello, sostuvo que cuando el presidente la entrevistó, le expresó que las cartas de saldo de los préstamos se estaban expidiendo con más de treinta (30) días de atraso, aun cuando se debían emitir en menos de diez (10) días desde que los clientes las solicitaban. Ante ello, manifestó que el presidente le peticionó que proveyera más información y verbalizó que *destapó una olla de grillos que ocasionaría que las cucarachas salieran*. La señora Joseph Vizcain arguyó que, un año después, fue despedida en represalia por su comentario. En consecuencia, solicitó varias sumas en concepto de la indemnización

---

[2] *Ley de indemnización por despido sin justa causa*, Ley Núm. 80 del 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 a *et seq.* (*Ley de Despido Injustificado*).
[3] *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115-1991, según enmendada, 29 LPRA sec. 194 *et seq.* (*Ley de Represalias*).
[4] *Íd.*, Anejo 2, págs. 6-9.

por el despido injustificado, los daños económicos y los honorarios de abogados, así como la reinstalación en su empleo.

Posteriormente, el 18 de diciembre de 2023, Oriental contestó la *Querella*.[5] Entre otras alegaciones, expuso que medió justa causa para el despido de la señora Joseph Vizcain por haber falsificado y alterado unos documentos que sometió ante el *Office of Foreign Assets Control* (OFAC) del Departamento del Tesoro federal en el proceso de aperturas de cuentas bancarias y la identificación de las personas involucradas en actividades que representaban un riesgo la seguridad nacional. El peticionario expresó que la acción de la recurrida en proveer información falsa de documentos bancarios violentó tanto las normas de la empresa como las reglamentaciones federales, lo que pudo constituir una conducta delictiva y provocar sanciones para la entidad bancaria.

Tras varios trámites procesales, el 22 de noviembre de 2024, Oriental presentó su *Moción de Sentencia Sumaria*.[6] Mediante esta, apuntó que procedía desestimar la reclamación sumariamente debido a la ausencia de hechos materiales en controversia que justificaran la alegación de la recurrida de despido injustificado y represalias. Así, precisó que solamente subsistían las controversias de derecho de si el despido de la señora Joseph Vizcain fue injustificado y si la recurrida estableció una relación causal entre la queja interna y cualquier acción adversa que el patrono tomó.

Oriental relató que la señora Joseph Vizcain era una asociada de ventas y servicios encargada de la apertura de cuentas, ventas de préstamos, generar tarjetas de débito, entre otros servicios. Explicó que, como parte del proceso de apertura de una cuenta bancaria, debía generar un reporte de OFAC para verificar si el cliente incurrió podría haber incurrido en conducta delictiva. Para ello, aseveró que

---

[5] *Íd.*, Anejo 3, págs. 10-16.
[6] *Íd.*, Anejo 4, págs. 17-332.

el reporte debía contener el nombre completo y la información del cliente.

Empero, Oriental alegó que el 23 de junio de 2023, la Unidad de *Quality Control* le notificó a la señora Joseph Vizcain que los nombres de dos (2) clientes en los reportes de ChexSystems y OFAC estaban incorrectos, por lo que le solicitó su corrección mediante la generación de un nuevo reporte. Sin embargo, esgrimió que la recurrida generó dos (2) reportes que contenían irregularidades y alteraciones en los nombres de los clientes, ya que los mismos tenían una letra distinta y conservaban el OFAC OID# del reporte original, indicativo de que, contrario a las normas y procedimientos, no generó un nuevo reporte. Ello, pues cada reporte de OFAC debe contener una identificación única y permanente que no es posible repetir. Según Oriental, la señora Beatriz Santiago Santana, gerente regional de Oriental, y el Departamento de Recursos Humanos confirmaron la referida información.

Por ello, Oriental expresó que la falsificación de documentos bancarios y la deshonestidad en el desempeño de las funciones de la señora Joseph Vizcain conllevó su despido inmediato, al violentar las normas del *Manual de Normas de Conducta y Disciplina para Empleados de Oriental*. Además, el peticionario puntualizó que la conducta impropia y deshonesta fue tan grave que puso en riesgo la marcha ordenada y el funcionamiento normal de la empresa.

Con respecto a la causa de acción por represalias, Oriental enunció que la recurrida no participó de una actividad protegida, a tenor con la *Ley de Represalias, supra,* toda vez que la expresión que hizo la recurrida al señor Fernández realizó formó parte de una conversación rutinaria de trabajo que no incidió en su despido.

Por su parte, el 17 de enero de 2025, la señora Joseph Vizcain presentó una *Oposición a la Moción de Sentencia Sumaria.*[7] En síntesis, planteó que no procedía dictar sentencia sumaria por existir controversias materiales de hecho sobre las alegaciones del despido injustificado y las represalias que requerían evaluar la credibilidad de los testimonios y celebrar un juicio plenario. En lo atinente al despido injustificado, la recurrida discutió que estaba en controversia si existió una mala conducta de su parte en las discrepancias de los reportes de OFAC; si la investigación interna de Oriental fue imparcial y se realizó un análisis técnico independiente, y sobre si recibió copia del Manual de Normas del banco. Por otro lado, en torno a las represalias, particularizó que existía controversia en si comentar los problemas al presidente de Oriental constituyó una actividad protegida por la *Ley de Represalias*, *supra* y si, a raíz de ello, se enfrentó a un trato antagónico por parte de su supervisora.

Sometido el asunto ante su consideración, el 10 de febrero de 2025, el TPI emitió una *Resolución,* en la que declaró No Ha Lugar a la solicitud de sentencia sumaria de Oriental.[8] Esto, puesto que resolvió que los siguientes hechos esenciales estaban en controversia:

1. Est[á] en controversia si el 24 de mayo de 2010, [...] la querellante recibió varias políticas del banco, incluyendo el Manual de Normas de Conducta para el Empleado.
2. Est[á] en controversia si el banco le informó que el reporte de OFAC tenía un estilo de letra distinto.
3. Est[á] en controversia si las irregularidades y las alteraciones fueron realizadas por la querellante y no por fallos sistémicos.
4. Est[á] en controversia si la querellante recibió las políticas de Oriental, incluyendo el Manual de Normas de Conducta y Disciplina para Empleados.
5. Est[á] en controversia si la conducta de la querellante constituyó una violación a las Normas 8, 14 y 27 del Manual de Conducta y Disciplina para Empleados.

El Foro Primario estableció que la credibilidad de los testigos, la imparcialidad de la investigación y la aplicación de las normas internas de Oriental eran cuestiones que debían ser evaluadas en un

---

[7] *Íd.*, Anejo 9, págs. 341-365.
[8] *Íd.*, Anejo 1, págs. 1-5. Archivada y notificada el 11 de febrero de 2025.

juicio plenario. No obstante, formuló que no existía controversia sobre los siguientes hechos esenciales:

1. El 20 de mayo de 2010, Scotiabank le ofreció empleo a la querellante por escrito.
2. El 24 de mayo de 2010, la querellante aceptó la oferta de empleo con Scotiabank.
3. La fecha de comienzo de empleo de la querellante con Scotiabank fue el 1ro de junio de 2010.
4. Para el año 2012, la querellante fue nombrada para el puesto de "Personal Banking Officer".
5. La querellante recibió una amonestación en el año 2014 por deficiencias operacionales.
6. El 31 de diciembre de 2019, se materializó la compra de todas las operaciones de Scotiabank de Puerto Rico por parte de Oriental Bank, parte querellada en este caso y entidad sobreviviente de dicha transacción.
7. El último puesto que ocupó la querellante mientras trabajó en Oriental fue el de asociada de ventas y servicios en la sucursal ubicada en Plaza [L]as Américas.
8. Las funciones y deberes de la querellante se enfocaban en la apertura de cuentas, venta de préstamos, generar tarjetas de débito y todo lo relacionado con servicio.
9. Al momento de su despido, la supervisora de la querellante era Maritza Rodríguez.
10. OFAC es la abreviatura para The Office of Foreign Assets Control ("en adelante OFAC") del Departamento del Tesoro de los Estados Unidos.
11. Uno de los requisitos al abrir una cuenta de depósito es llevar a cabo la indagación en "ChexSystems" y "OFAC".
12. La Oficina de Control de Activos Foráneos estadounidense es un organismo de control financiero dependiente del Departamento del Tesoro de los Estados Unidos.
13. El reporte OFAC es un reporte en el cual se verifica el nombre de los clientes y su información al momento de la apertura de una cuenta bancaria.
14. Cada reporte de OFAC contiene una identificación ("OFAC OID#") que es única y permanente a cada reporte.
15. No existen dos reportes de OFAC con el mismo OFAC OID#.
16. La obtención del reporte de OFAC es parte del proceso de apertura de una cuenta de banco.
17. De no cumplirse con la obtención del reporte de OFAC, el Banco se expone a multas y hasta la pérdida de licencia. Las sanciones regulatorias no pueden ser trasladadas automáticamente al personal operativo si el sistema institucional presenta deficiencias.
18. Conforme a las políticas de Oriental, el reporte de OFAC debe contener la información del cliente y el nombre del cliente debe aparecer con ambos apellidos.
19. La unidad de *Quality Control* (en adelante "*Quality*") es la unidad responsable de revisar cada cuenta bancaria aperturada y de evaluar que la información personal del cliente sea congruente.
20. La querellante reconoció que cuando *Quality* le hacía un señalamiento para corregir el reporte OFAC, este se hacía mediante correo electrónico.
21. De ser necesario corregir el reporte de OFAC, la querellante debía generar un reporte nuevo de OFAC.
22. Una vez realizada la corrección, la querellante debía informarle a *Quality* mediante [un] correo electrónico que se realizó la corrección.
23. El correo electrónico de la querellante, asignado por Oriental, mientras fue empleada del Banco es jenny.joseph@orientalbank.

24. La apertura de las cuentas bancarias [en controversia] estuvo a cargo de la querellante.

25. [...]

26. [...]

27. El 23 de junio de 2023, el área de *Quality* le notificó a la querellante mediante correo electrónico que la estructura en el nombre de [los] reportes de ChexSystems y OFAC de la cuenta [de un cliente] era incorrecta, por lo que se le refirió el caso a la querellante para [su] corrección.

28. El 5 de julio de 2023, la querellante, mediante su correo electrónico, le notificó a *Quality* que realizó la corrección solicitada.

29. Al momento de los hechos y hasta el presente, la Sra. Beatriz Santiago se desempeña como Gerente Regional de Oriental.

30. El 13 de julio de 2023, mediante correo electrónico, Santiago recibió una comunicación del equipo de *Quality* notificando que el reporte de OFAC [...], trabajado por la querellante, tenía irregularidades y alteraciones en el nombre del cliente.

31. Ante la seriedad del asunto, el 17 de julio de 2023, Santiago refirió lo ocurrido al Departamento de Recursos Humanos.

32. Ante lo sucedido, la Sra. Glenda Acevedo, del Departamento de Recursos Humanos de Oriental, inició una investigación interna.

33. La querellante entiende que su despido fue en represalias, ya que durante el mes de mayo de 2022 le manifestó al presidente de Oriental, el Sr. José Rafael Fernández, unas alegadas situaciones incómodas que estaban viviendo los clientes.

34. La querellante reconoció en su deposición bajo juramento que no recibió estas alegadas instrucciones.

35. La querellante fue despedida de su empleo el 24 de julio de 2023.

Inconforme, el 21 de febrero de 2025, Oriental presentó una *Petición de Certiorari*, en la que planteó que el TPI incidió en cometer los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU ANÁLISIS DE LA MOCIÓN DE SENTENCIA SUMARIA, PRINCIPALMENTE, AL TOMAR COMO CERTERAS LAS DIVERSAS ALEGACIONES Y CONCLUSIONES SIN APOYO EN LA PRUEBA [PLASMADA] POR LA RECURRIDA EN SU OPOSICIÓN[.]

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EXISTEN CINCO CONTROVERSIAS DE HECHOS QUE AMERITAN LA DILUCIDACIÓN PLENARIA CUANDO LOS HECHOS MEDULARES EN ESTE CASO SON CLAROS Y CUANDO A LA LUZ DE ELLOS SE JUSTIFICA EL DESPIDO DE LA RECURRIDA[.]

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IGNORAR POR COMPLETO EL RECLAMO SUMARIO PRESENTADO POR ORIENTAL CON RELACIÓN A LA CAUSA DE ACCIÓN POR REPRESALIAS CUANDO QUEDÓ DEMOSTRADA SU IMPROCEDENCIA[.]

En esencia, Oriental planteó que el Foro Primario erró al denegar su solicitud de sentencia sumaria. Como primer y segundo

error, indicó que el TPI incidió al basar su determinación en alegaciones que no se fundamentaron en los documentos relacionados con la *Moción de Sentencia Sumaria*. Pues, el peticionario arguyó que estos demostraron que el despido de la señora Joseph Vizcain estaba justificado. Al respecto, Oriental enfatizó que los hechos incontrovertidos apuntaban que la señora Joseph Vizcain alteró los nombres de dos (2) clientes para justificar un trabajo que no realizó. Puntualizó que estas alteraciones en los reportes fueron significativas, ya que la institución tenía la obligación de someterlos al Departamento del Tesoro federal en el proceso de apertura de cuentas bancarias. A su vez, sostuvo que tal proceder constituyó un acto deshonesto intolerable en cualquier entorno laboral. Por ello, señaló que el despido de la recurrida era justificado, sin que haya mediado un ánimo de represalia.

En torno a los hechos 1, 4 y 5 expuestos como controvertidos por el Foro recurrido, Oriental puntualizó que de la propia deposición de la señora Joseph Vizcain surgió que recibió el Manual de Normas de Conducta de Scotiabank en el 2010. Asimismo, adujo que la recurrida recibió tanto el Manual de Normas como las políticas de Oriental, las cuales estaban disponibles en una plataforma interna del banco que tenía acceso. De esta forma, expuso que la señora Joseph Vizcain tenía conocimiento de la Norma 27 del Manual de Conducta y Disciplina para Empleados sobre la prohibición de proveer información incorrecta o falsa, Norma 14 sobre su deber de honestidad y la Norma 8 sobre su deber de eficiencia y competencia.

Por otro lado, el peticionario subrayó que no existía controversia sobre los hechos 2 y 3, ya que se demostró mediante juramento que los reportes de OFAC estaban visiblemente alterados en el nombre de los clientes, lo que reveló una falta grave demostrativa de total indiferencia hacia sus deberes laborales y una deshonestidad intolerable por parte de la recurrida. Igualmente,

indicó que tal acción exponía a la empresa a consecuencias legales considerables, tal como el TPI los estableció en los hechos incontrovertidos 10 al 21.

Como tercer error, Oriental sostuvo que el TPI ignoró su reclamo en que la causa de acción de represalias era improcedente. Ello, en vista de que la señora Joseph Vizcain no acudió a algún foro gubernamental protegido ni al Departamento de Recursos Humanos de Oriental ni emitió expresiones tendentes a establecer que sus quejas al presidente del banco motivaron su despido. No obstante, el peticionario aseveró que su despido no estaba relacionado a su expresión, ya remota para cuando fue despedida la recurrida, sino a los actos deshonestos y contrarios a sus deberes de ésta.

Ante ello, el 25 de febrero de 2025, emitimos una *Resolución* en la que le concedió diez (10) días a la señora Joseph Vizcain para expresarse sobre los méritos del recurso, a tenor con la Regla 37 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 37.

Transcurrido en exceso el término concedido sin que la recurrida haya expresado su posición, damos por perfeccionado el recurso y procedemos a resolverlo sin su comparecencia.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras,* 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, este Foro apelativo posee

la facultad discrecional de expedir o denegar el auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra*, pág. 847.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente las instancias en las que este Tribunal de Apelaciones posee autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. La referida Regla dispone que solamente se expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, R. 56 y 57 o a la denegación de una moción de carácter dispositivo. Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1.

A su vez, a modo de excepción, este Tribunal puede revisar las órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la que esperar a la apelación constituye un fracaso irremediable de la justicia. *Íd.*

De otra parte, la revisión de resoluciones interlocutorias en un procedimiento laboral es contraria al carácter sumario de la *Ley de Procedimiento Sumario de Reclamaciones Laborales, supra. Medina Nazario v. McNeill Healthcare LLC, supra*, pág. 733; *Díaz Santiago v. PUCPR et al.*, 207 DPR 339 (2021); *Dávila, Rivera v. Antilles Shipping Inc.*, 147 DPR 483, 348-349 (1999). No obstante, esta norma no es absoluta. *Íd.* Pues, como excepción, procede la revisión inmediata cuando el tribunal actuó sin jurisdicción; los fines de la justicia lo requieran; se dispondrá del caso en forma definitiva o se evite una

grave injusticia. *Íd.* En estas circunstancias, el carácter sumario y la celeridad que distinguen a los procedimientos tramitados bajo la *Ley de Procedimiento Sumario de Reclamaciones Laborales, supra,* ceden para que se revisen las resoluciones interlocutorias.

El propósito de esta regla es evitar la dilación que causaría la revisión judicial de las controversias que se podrían plantear en una apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra,* pág. 486; *800 Ponce de León v. AIG, supra,* pág. 175; *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 593-594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra.*

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones, supra,* R. 40, establece los criterios que debemos considerar en el ejercicio de la facultad discrecional al atender una petición de *certiorari.* A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Si este Tribunal deniega la expedición del auto de *certiorari,* no será necesario exponer las razones para tal determinación. *Rivera Figueroa v. Joe's European Shop, supra,* pág. 594; *IG Builders et al. v. BBVAPR, supra,* pág. 336. En tal caso, no asumimos jurisdicción

sobre el asunto planteado ni disponemos del mismo en sus méritos. *Torres González v. Zaragoza Meléndez, supra,* pág. 848; *McNeill Healthcare LLC v. Municipio De Las Piedras, supra,* pág. 405.

### B. Sentencia sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra; Banco Popular v. Posada,* 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1. La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra.* En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra; Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos

subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021). Resulta importante que "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009). Empero, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. *Ramos Pérez v. Univisión, supra*, pág. 219; *Birriel Colón v. Econo y otro, supra*, pág. 91. Véase también Regla 36.3 (e) de Procedimiento Civil, *supra*, R. 36.3 (e). Así pues, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro, supra*.

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia sustancial. *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Econo y otro, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337.

De otra parte, en *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo estableció un estándar que este Tribunal de Apelaciones debe emplear al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que está llamado a realizar una revisión *de novo*, conforme con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, no podemos considerar evidencia que no se presentó ante el Foro *a quo*, y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra,* pág. 116.

En segundo lugar, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra.*

En tercer lugar, debemos revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra.*

En cuarto lugar, si este Foro apelativo determina que no existen hechos materiales en controversia, procede revisar si el Foro Primario aplicó correctamente el derecho. *Íd.,* pág. 119.

### C. Despido injustificado

El Estado tiene un interés apremiante en regular las relaciones obrero-patronales con el fin de evitar prácticas injustas de trabajo e implementar una clara política pública de protección de los derechos de los empleados. *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001). Así, pues, la *Ley de Despido Injustificado, supra,* tiene el

propósito de desalentar los despidos injustificados y las actuaciones arbitrarias contra los empleados mediante la imposición de remedios económicos. *Ruiz Mattei v. Commercial Equip. Fin., Inc.*, 2024 TSPR 68, 214 DPR ___ (2024); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

En tal sentido, el Artículo 1 de la *Ley de Despido Injustificado, supra*, sec. 185a, establece que todo empleado que trabaje mediante remuneración, contratado sin tiempo determinado y que fuere despedido sin que haya mediado justa causa tendrá derecho a recibir una indemnización o mesada por el tiempo trabajado para el patrono. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 771 (2022); *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 549-550 (2021). Sin embargo, para que el empleado pueda aprovecharse de la presunción de despido injustificado, tiene el peso de la prueba inicial para demostrar que, ciertamente, fue despedido. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011).

En dicha legislación se incorporó el estándar de justa causa como limitación a todo despido. *Díaz v. Wyndham Hotel Corp.*, *supra*, págs. 374-375. Es decir, no existe una prohibición absoluta en contra del despido, ya que el patrono puede plantear la defensa de justa causa. *Íd.*; *Rodríguez Gómez v. Multinational Ins.*, *supra*, pág. 549; *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 651 (2014). Al respecto, el Artículo 2 de la *Ley de Despido Injustificado, supra*, sec. 185b, dispone lo siguiente:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para

realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. [...]

Importante es que el despido como sanción por una primera ofensa o un acto aislado se justifica si:

[l]a falta o [el] acto aislado que dé lugar al despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. *Feliciano Martes v. Sheraton*, 182 DPR 368, 383 (2011) *citando a Srio. del Trabajo v. ITT*, 108 DPR 536, 544 (1979); véase también *Srio. del Trabajo v. GP Inds., Inc.*, 153 DPR 223, 246-247 (2001).

Cónsono con lo anterior, ser deshonesto constituye una falta grave que tiende a destruir la dinámica laboral, denota ausencia de valor moral y afecta el buen funcionamiento de la empresa. *Miranda Ayala v. Hosp. San Pablo*, 170 DPR 734, 741 (2007).

### C. Represalias en el empleo

En otro extremo, la *Ley de Represalias, supra,* provee una protección a los empleados frente a las represalias que pueda tomar su patrono en su contra por proveer testimonio, expresión o información verbal o escrita ante un foro judicial, legislativo o administrativo. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 361 (2009); *Ocasio v. Kelly Servs.*, 163 DPR 653, 684 (2005). A saber, el Artículo 2 (a) de la *Ley de Represalias, supra*, sec. 194b, dispone que:

Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Por otro lado, el Artículo 2 (c) de la *Ley de Represalias, supra*, sec. 194b, establece dos (2) vías que el empleado tiene disponible para

establecer una causa de acción por represalias. *SLG Rivera Carrasquillo v. AAA, supra*; *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 671 (2017). El empleado puede probar una violación de la ley mediante evidencia directa o circunstancial, o puede establecer un caso *prima facie* de represalias demostrando que participó en una actividad protegida y subsiguientemente fue despedido, amenazado o discriminado. *Íd.* Es decir, la acción adversa del patrono ocurrió al poco tiempo de haber incurrido en la actividad protegida. *Íd.*; *Rivera Menéndez v. Action Services,* 185 DPR 431, 446 (2012); *Feliciano Martes v. Sheraton, supra,* págs. 399-400. Sin embargo, "en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal". *Velázquez Ortiz v. Mun. de Humacao, supra,* pág. 671.

Expuesta la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

### III.

En el presente caso, Oriental planteó que el TPI cometió el error de denegar su solicitud de sentencia sumaria y no desestimar la *Querella* de despido injustificado y represalias presentada en su contra. Esto, al comprender que no existía controversia en que medió justa causa para despedir a la señora Joseph Vizcain de su empleo.

Tras un análisis sosegado del expediente, resolvemos que procede expedir el auto de *certiorari.* Como adelantáramos, nos corresponde revisar *de novo* tanto la solicitud de sentencia sumaria de Oriental como la oposición sometida por la señora Joseph Vizcain. Tras no existir controversia de cumplimiento con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36, procedemos a revisar si en este caso realmente existían hechos materiales en controversia.

En tal ejercicio, debemos reseñar que el Foro Primario formuló que existía controversia en si la señora Joseph Vizcain recibió las políticas de Oriental y si su conducta infringió las Normas 8, 14 y 27 del Manual de Conducta y Disciplina para Empleados. Asimismo, el TPI entendió que estaba en controversia si Oriental le informó a la recurrida si el reporte de OFAC tenía un estilo de letra distinto y si las alteraciones al reporte de OFAC fueron realizadas por la señora Joseph Vizcain y no por fallos sistemáticos. Considerada la totalidad del expediente, no le asiste la razón al Foro Primario.

Primeramente, es menester señalar que los hechos formulados como controvertidos por el TPI no constituían elementos subjetivos o de credibilidad que requerían la celebración de un juicio plenario. Además, no eran un elemento esencial para la resolución de esta controversia. Véase *Carpets & Rugs v. Tropical Reps, supra.*

De otro lado, de los propios documentos que fundamentaron la solicitud de sentencia sumaria de Oriental surgió que la señora Joseph Vizcain expresó que recibió las políticas del banco Scotiabank que posteriormente Oriental compró. A saber, en su deposición tomada el 9 de agosto de 2024, la recurrida indicó que el 24 de mayo de 2010, recibió varias políticas del banco, incluyendo el Manual de Normas de Conducta para el Empleado de Scotiabank. Véase *Deposición de la Sra. Yenny Eloísa Joseph Vizcaino*, págs. 26-27. Además, recibió las políticas de Oriental, incluyendo el Manual de Normas de Conducta y Disciplina para Empleados de esta empresa, documento que igualmente se encontraba disponible para su revisión en la plataforma interna *Connect-O*. Véase *Declaración jurada de la Sra. Glenda Ivelisse Acevedo Gerena*, párr. 15-17. Es decir, el peticionario presentó evidencia que demostró que, efectivamente, la señora Joseph Vizcain recibió las políticas de la empresa, incluyendo el Manual de Normas de Conducta y Disciplina para Empleados de esta empresa. El referido documento disponía lo siguiente:

**Norma – 8 Eficiencia en el desempeño de sus funciones**
La eficiencia y competencia en el trabajo es requisito indispensable del puesto que usted ocupa, por lo que la negligencia, incompetencia o dejadez en el desempeño de las funciones que usted realiza es causa para que se tome la acción disciplinaria correspondiente.
[…]
Todo empleado deberá mostrar interés y un sentido de buen juicio y responsabilidad en el desempeño de sus funciones.

[…] El no llevar a cabo sus funciones de forma eficiente, a tono con la filosofía y las necesidades de Oriental, es causa suficiente para el despido.

**Norma – 14 Honestidad**
Todos los empleados tienen un deber de honestidad hacia Oriental, sus supervisores, gerentes y compañeros de trabajo. La deshonestidad en el desempeño de sus funciones no será tolerada y conllevará el despido inmediato. […]

**Norma – 27 Falsificación, fraude, suministrar información incorrecta, falsa y/o incompleta; omisión de proveer información**
Está totalmente prohibido dar información incorrecta, incompleta o falsa, al igual que la omisión de proveerla, en la solicitud de empleo, hojas de asistencia, certificados médicos, verificación de empleo, informes, formas, cuadres o cualquier otro documento oficial que Oriental o el gobierno requiera que el empleado complete o presente como condición de empleo o en el ejercicio normal de sus funciones como empleado.

De igual forma, está prohibido dar información incorrecta, incompleta o falsa, al igual que la omisión de proveerla, en el desempeño de sus funciones y deberes como empleado de Oriental, sea intencionalmente o por negligencia.

El tergiversar o manipular información u omitirla para beneficio del empleado o de un tercero, será causa para la acción disciplinaria correspondiente en el momento en que sea detectado, incluyendo el despido, según las circunstancias del caso.

Suministrar información falsa, incorrecta o incompleta para obtener cualquier tipo de licencia conferida por un ente gubernamental o regulatorio, o el mal uso de la misma, o utilizarla para cualquier otro propósito que el aprobado, será causa suficiente para que Oriental pueda tomar la acción disciplinaria correspondiente según las circunstancias del caso, incluyendo el despido.

A su vez, del expediente surgió que la Unidad de *Quality Control* le informó a la señora Joseph Vizcain que los nombres de unos clientes en los reportes de ChexSystems y OFAC como parte de la apertura de cuentas bancarias estaban incorrectos. Luego de que presentase los documentos nuevamente, distintas unidades de Oriental confirmaron que los reportes enviados por la recurrida mediante su correo electrónico contenían irregularidades y alteraciones en el nombre de los clientes. Esto, ya que era el mismo

reporte con igual OFAC OID#, pero con una alteración en los apellidos de los clientes, reflejados por un tipo de letra claramente distinta. Cabe destacar que cada informe de OFAC tiene un número único de identificación, OFAC OID#. Es decir, la recurrida sabía que no podía reusar los reportes previamente utilizados modificando parte del contenido de estos, sino que debía generar unos complemente nuevos.

La incorrección en los reportes de OFAC presentados ante el Departamento del Tesoro federal exponía a Oriental a sanciones que podían conllevar hasta la pérdida de licencias. Por otro lado, la propia recurrida reconoció que no es permitido alterar un documento bancario. Véase *Deposición de la Sra. Yenny Eloísa Joseph Vizcaino*, págs. 40-41.

De esta manera, de los propios documentos relacionados a la solicitud de sentencia sumaria del peticionario surgió que la señora Joseph Vizcain presentó dos (2) informes de OFAC alterados en la parte del nombre de los clientes. De hecho, tras analizar los documentos, se observa palpablemente que la alteración en ciertas partes de los nombres de los clientes no sólo ocurrió en la tipografía, sino también en el color y en el formato *bold* del texto. Por ello, incidió el TPI al formular como hecho controvertido si la recurrida infringió las Normas 8, 14 y 27 del Manual de Normas de Conducta y Disciplina para Empleados de Oriental. Pues, se demostró que contravino las políticas de la empresa de eficiencia, honestidad y prohibición de proveer información incorrecta, falsa o incompleta.

Tal como se expuso en la parte expositiva del texto, una primera o única ofensa constituye justa causa para el despido si es tan lesiva para el bien orden y funcionamiento de la empresa que hace tan imprudente esperar su reiteración para separarlo de su empleo. Además, es norma reiterada que la deshonestidad constituye una falta grave que igualmente constituye justa causa para separar

a un empleado de su empleo. En este caso, la acción de la recurrida en alterar documentos regulados por agencias federales, con el agravante de que conocía que debía generar unos nuevos, y con el conocimiento de que el desempeño incorrecto de dicha tarea podría significar la posibilidad de imposición de sanciones a la empresa, constituyó una falta de deshonestidad de naturaleza tan grave que constituyó justa causa para su despido. No nos parece irrazonable que Oriental decidiera no esperar o permitir que la recurrida incurriera en este tipo de conducta de forma reiterada o a manera de un patrón.

Por todo lo anterior, el TPI no estaba impedido de disponer del caso sumariamente. Así las cosas, corresponde expedir el auto de *certiorari,* revocar la determinación recurrida y desestimar el pleito sin la necesidad de celebrar un juicio plenario, puesto que los documentos demostraron que las causas de acción de la *Querella* de la señora Joseph Vizcain no se sostenían en derecho.

Debido al resultado que llegamos, resulta innecesario discutir el tercer señalamiento de error en sus méritos. Solo basta con consignar la ausencia total de proximidad temporal que permita, en este caso establecer una relación de causalidad entre la expresión efectuada por la recurrida al señor Fernández, y el despido de esta, por las circunstancias ampliamente discutidas en los párrafos previos de esta Sentencia.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la determinación recurrida. En consecuencia, se desestima la *Querella* presentada por la señora Joseph Vizcain.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones