EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Popular de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Laureano Zorrilla Posada; La Corporación Manny Dávila, Inc.<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 62<br><br>213 DPR ___ |

Número del Caso: CC-2023-0332

Fecha: 17 de junio de 2024

Tribunal de Apelaciones:

    Panel IV

Representante legal de la parte peticionaria:

    Lcdo. Miguel A. Canals Canals

Representante legal de la parte recurrida:

    Lcda. Melisa Figueroa Castro

Materia: Derecho Registral – Una nota aclaratoria del Registrador de la Propiedad, sin mediar consentimiento de las partes o una resolución judicial que ordene la corrección de un asiento, no puede tener el efecto de enmendar un error de cabida en un contrato hipotecario.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Banco Popular de Puerto Rico

Recurridos

v.

Laureano Zorrilla Posada; La Corporación Manny Dávila, Inc.

Peticionarios | CC-2023-0332 | Certiorari |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 17 de junio de 2024.

En esta ocasión, nos confrontamos a la concesión de una ejecución de hipoteca por la vía sumaria a pesar de una incongruencia en la cabida de un terreno entre la documentación hipotecaria, otras constancias que le preceden en el Registro de la Propiedad (Registro) y la realidad física del inmueble. De acuerdo con los foros recurridos, la procedencia de tal remedio se fundamentó en una nota aclaratoria sobre la cabida consignada posteriormente por un Registrador de la Propiedad en la hipoteca inscrita, pues, a su juicio, esta tuvo el efecto de subsanar la inconsistencia.

Por consiguiente, corresponde a este Tribunal resolver, no solo si procede la sentencia sumaria en esta

instancia, sino también si el error en cabida en la contratación hipotecaria inscrita era susceptible a ser subsanado mediante una nota aclaratoria posterior que hace referencia a una inscripción que le precede. Así las cosas, veamos el cuadro fáctico dentro del cual se desarrolló esta controversia.

**I**

La disputa ante nuestra consideración tiene su origen en una Demanda sobre cobro de dinero y ejecución de hipoteca que instó el Banco Popular de Puerto Rico (BPPR) en contra del Sr. Laureano Zorrilla Posada (señor Zorrilla Posada) y Manny Dávila, Inc. (Corporación). En esta, el BPPR alegó que el señor Zorrilla Posada suscribió y emitió un pagaré hipotecario a favor de Doral Mortgage Corporation el 29 de agosto de 2003 por la suma de $84,500.00 con intereses al 6.95% anual, cuyo pago fue garantizado con una finca de 252 metros cuadrados ubicada en Río Piedras. Indicó que era el sucesor en derecho y tenedor del pagaré, y que el señor Zorrilla Posada había incumplido con los pagos mensuales, adeudando $44,472.80 del principal. Por lo cual, solicitó el pago de lo adeudado y la ejecución y venta en subasta pública del inmueble.

En su Contestación a demanda y solicitud de vista para nombramiento de defensor judicial, la Corporación, titular registral de la finca en cuestión, aceptó la mayoría de las

alegaciones, pero objetó la aceleración del vencimiento y la cesión del pagaré.[1]

Luego de varios trámites procesales, la Corporación presentó una <u>Moción en solicitud de desestimación de la causa de ejecución de hipoteca al amparo de la Regla 10.2 de las de Procedimiento Civil y que se ordene la continuación de los procedimientos en cobro de dinero únicamente</u>. Señaló que tanto la Escritura Núm. 259 como la <u>Demanda</u> describían el inmueble con una cabida de 252 metros cuadrados, pero que la <u>Certificación registral</u> de la finca contenía una observación del Registrador de la Propiedad que consignaba una cabida de 600 metros cuadrados en acorde con otra inscripción que precedía a la hipoteca, en específico, la novena inscripción sobre un caso de expediente posesorio. Argumentó que la ejecución no podía ser concedida según solicitada toda vez que había una diferencia de 348 metros cuadrados entre lo peticionado y la realidad física del inmueble, por lo que procedía desestimar lo relacionado con la ejecución de la hipoteca por tratarse de una escritura defectuosa.

---

[1] A su vez, sostuvo que el señor Zorrilla Posada estaba incapacitado por razón de su padecimiento de Alzheimer, por lo cual solicitó la asignación de un defensor judicial. Esto fue concedido eventualmente. Posteriormente, se celebró una vista en la cual el defensor judicial fue relevado por falta de información y evidencia sobre el estado mental del señor Zorrilla Posada y le fue anotada la rebeldía por su incomparecencia a los procedimientos.

En respuesta, el BPPR presentó una <u>Moción de réplica</u> en la cual sostuvo que la descripción de la finca en sus documentos era la misma que surgía de la <u>Certificación registral</u>, por lo que fue en esta sobre la cual se constituyó la hipoteca que, además, estaba debidamente inscrita. Añadió que la hipoteca se extendía al exceso de cabida, aun cuando este se hubiera hecho constar en el Registro con posterioridad a la inscripción.[2]

Así las cosas, el 6 de septiembre de 2019, el foro primario emitió una <u>Resolución</u> mediante la cual denegó la solicitud de desestimación solicitada por la Corporación. Determinó que la hipoteca que se pretendía ejecutar constaba inscrita en el Registro y que la descripción registral en la Escritura Núm. 259 era suficiente para distinguir el inmueble de cualquier otro.

---

[2]Posteriormente, el BPPR presentó una <u>Moción informativa urgente y suplementaria a moción de réplica a solicitud de desestimación</u> en la cual indicó que el Registrador de la Propiedad había hecho ciertas notas aclaratorias en cuanto a la finca en cuestión con respecto al error en la cabida y la medida correcta según otra inscripción. Por su parte, la Corporación instó una <u>Moción en apoyo y suplementaria a moción de desestimación</u> mediante la cual arguyó que el error en la documentación sobre la cabida de la finca era enteramente atribuible a la parte que extendió la facilidad de crédito hipotecario y que el Registro de la Propiedad no debió haber inscrito la hipoteca hasta que se rectificara el error, pues admitir que ocurrió un error o inadvertencia no subsanaba el error en la escritura de hipoteca. En su <u>Moción suplementaria y en oposición a desestimación</u>, el BPPR sostuvo que la mera admisión de que la hipoteca está inscrita es suficiente para vencer el planteamiento de la Corporación, que el error en la cabida es insuficiente para invalidar la hipoteca y que, en todo caso, se hizo una rectificación con respecto a ello. Apéndice de <u>Petición de certiorari</u>, págs. 124-132, 169-181.

Posteriormente, el BPPR instó una Solicitud de sentencia sumaria. Arguyó que no existía controversia real sobre hecho material alguno toda vez que se suscribió un pagaré, se inscribió la hipoteca en el Registro, se dejaron de emitir los pagos y no había duda sobre cuál fue la propiedad dada en garantía. Reiteró que el cambio de cabida no afectó el derecho de terceros y que tal corrección fue hecha por el propio Registro tras reconocer el error.

En su Moción en oposición a solicitud de sentencia sumaria, la Corporación reiteró que las inscripciones previas a la hipoteca demostraban que la cabida era de 600 metros cuadrados, por lo que las subsiguientes que indicaban una menor, incluyendo la inscripción dieciocho (18) de hipoteca en cuestión, violaron el tracto del Registro. Añadió que el pacto de colateral hipotecario fue solo por 252 metros cuadrados, pues el resto no fue considerado ni incluido como garantía de la obligación, por lo que el BPPR se enriquecería injustamente si se le concediera una extensión de terreno sobre la cual nunca se pactó y no solicitó originalmente. Argumentó, además, que existían múltiples controversias que obstaculizaban la resolución sumaria de la controversia, principalmente, si la anotación marginal del Registrador podía tener un efecto de enmienda sobre el asiento de la hipoteca con respecto a la cabida inscrita.

El 20 de octubre de 2022, el Tribunal de Primera Instancia emitió una Sentencia mediante la cual declaró con lugar la solicitud de sentencia sumaria del BPPR y ordenó la ejecución de la hipoteca. Determinó que el contrato hipotecario demostraba que la intención del señor Zorrilla Posada fue garantizar el pago de la deuda con la totalidad del inmueble y que la descripción registral detallaba la finca de forma tal que no había duda sobre su identidad, independientemente de la diferencia de cabida en la documentación.

Insatisfecha, la Corporación instó una Moción de reconsideración de sentencia. En esta, resaltó nuevamente la discrepancia entre la Escritura Núm. 259 por cabida de 252 metros cuadraros y el Registro con 600 metros cuadrados, siendo la primera la medida reclamada por el BPPR y la segunda la que finalmente se le concedió sumariamente sin prueba o vista a pesar de constituir el hecho material central de la controversia. Señaló que la aclaración del Registrador de la Propiedad corresponde a una orden judicial en un asiento diferente al de la contratación hipotecaria, la inscripción novena versus la decimoctava, por lo que no podía usarse para corregir error o defecto en algún otro asiento, mucho menos en uno tan posterior. Objetó que el foro primario hiciera determinación alguna con respecto a la intención del deudor cuando no se le había permitido comparecer y no había tomado lugar descubrimiento de prueba

al respecto. El Tribunal de Primera Instancia denegó la reconsideración.

Todavía disconforme, la Corporación presentó una Apelación ante el Tribunal de Apelaciones en la cual afirmó que persistía una discordancia en la descripción registral de la finca entre la Escritura Núm. 259 y el Registro. Indicó que ello hacía imposible que el Tribunal de Primera Instancia adjudicara la procedencia de la ejecución de la totalidad de la finca por la vía sumaria, pues la aclaración del Registrador no corrigió el tracto registral de la finca o enmendó el asiento. Negó que la doctrina de garantía de cabida según el Registro aplicara, pues el reconocimiento en la extensión de cabida por expediente posesorio precedía en inscripción a la contratación hipotecaria.

El 31 de marzo de 2023, el Tribunal de Apelaciones emitió una Sentencia mediante la cual confirmó la determinación del Tribunal de Primera Instancia. Concluyó que los señalamientos de la Corporación se trataban de controversias de derecho y que no existía controversia sustancial de hechos materiales que impidiera la resolución sumaria de la controversia. Determinó que de la Escritura Núm. 259 se desprendía la intención de las partes de gravar la totalidad de la finca y que la discrepancia en el exceso de cabida se trató de un error que fue aclarado por el Registrador de la Propiedad a través de las notas.

En desacuerdo, la Corporación presentó una Moción de reconsideración. Señaló que los 348 metros cuadrados adicionales que no fueron incluidos en el contrato hipotecario fueron producto de una Resolución en un caso sobre expediente posesorio por haberse ganado terreno a un mangle. Añadió que, contrario a lo señalado por el foro apelativo intermedio, no se trató de una accesión natural, mejoras, indemnización, expropiación forzosa o un aumento de cabida posterior a la inscripción. Además, rechazó que no existieran hechos en controversia, pues las partes divergían precisamente sobre cuál era la cabida que garantizó la obligación principal, asunto que requería desfile de prueba. Finalmente, expuso que una nota marginal o aclaratoria no rectificaba o subsanaba asientos inscritos incorrectamente. Esta fue declarada no ha lugar.

En su Petición de certiorari ante este Tribunal, la Corporación sostiene que el Tribunal de Apelaciones erró en su análisis sobre la sentencia sumaria debido a todos los hechos materiales que hay en controversia. Señala que le es inaplicable lo relacionado con el Art. 61 de la Ley Hipotecaria, infra, según fue determinado por el foro apelativo intermedio con respecto a la extensión de la hipoteca al resto de la cabida del inmueble. Arguye que la prueba demuestra que se gravaron solo 252 metros cuadrados, por lo que aún está en controversia cuánto de la cabida total estaría expuesta a ejecución y cuál fue la intención

de las partes al pactar el contrato hipotecario. Finalmente, expresa que el asiento no es susceptible a ser rectificado mediante una nota aclaratoria del Registrador de la Propiedad.

De su parte, en su Oposición a recurso de certiorari, el BPPR indica que los argumentos relacionados con la cabida ya fueron argumentados y adjudicados de forma final y firme ante el Tribunal de Primera Instancia tras la solicitud de desestimación y que, además, deben ser dilucidados en un pleito independiente por tratarse de alegadas actuaciones u omisiones del Registro. Afirma que la hipoteca consta en escritura pública y está inscrita en el Registro, por lo que es válida y ejecutable. Finalmente, arguye que la inscripción contiene una nota aclaratoria que reconoce el error en la cabida, por lo que fue subsanada.

Trabada así la controversia, tras la expedición del auto solicitado y la comparecencia de las partes, procedemos a resolver el asunto, no sin antes repasar el Derecho aplicable a la controversia.

## II

### A.

Como se sabe, la sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA

Ap. V, R. 36.3(e); Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

Para poder dictar sentencia sumariamente, la parte promovente debe demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". 32 LPRA Ap. V, R. 36.1-36.2. Al respecto, un hecho material esencial y pertinente es aquel que puede afectar el resultado de la reclamación de conformidad con el derecho sustantivo aplicable. Mejías et al. v. Carrasquillo et al., 185 DPR 288, 300 (2012) (citas omitidas).

Por otro lado, la parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma tan detallada y específica como lo haya hecho la parte promovente". Mun. de Añasco v. ASES et al., 188 DPR 307, 328 (2013). "Para eso, la parte opositora 'estará obligada a demostrar que tiene prueba para sustanciar sus alegaciones'". Íd., (citando a Abrams Rivera v. E.L.A., 178 DPR 914, 933 (2010)).

Ahora bien, este Tribunal ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Meléndez González et al.

v. M. Cuebas, 193 DPR 100, 118 (2015); Vera v. Dr. Bravo, 161 DPR 308, 334 (2004). Entiéndase, le corresponde al foro apelativo realizar una evaluación de novo. Meléndez González et al. v. M. Cuebas, supra, pág. 116 (citas omitidas). Para ello, es indispensable "analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos". Rosado Reyes v. Global Healthcare, 205 DPR 796, 809 (2020).

Es decir, como parte de nuestra función revisora, debemos evaluar todos los documentos que obren en el expediente de modo que, previo a determinar la procedencia de una solicitud de sentencia sumaria, realicemos un "balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". Íd., pág. 808. (citas omitidas).

**B.**

Como es consabido, la hipoteca constituye un derecho real que garantiza una obligación pecuniaria, por lo que sus rasgos principales son su carácter accesorio e indivisible, su constitución registral y que recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la posesión del propietario. Westernbank v. Registradora, 174 DPR 779, 784 (2008).[3] Según la disposición del ahora derogado Código Civil de 1930, el cual

---

[3]Citando a J.M. Chico y Ortiz, Estudios sobre Derecho Hipotecario, Tomo III, Edición Tercera, pág. 1282.

es aplicable a los hechos debido al momento en el que ocurrieron, "es indispensable, para que la hipoteca quede válidamente constituida, que el documento en que se constituya sea inscrito en el registro de la propiedad". Art. 1774 del antiguo Código Civil de 1930, 31 LPRA ant. sec. 5042.

En lo pertinente a esta controversia, conforme lo dispone el Art. 61 de la Ley Núm. 210-2015, según enmendada, conocida como la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico (Ley Hipotecaria), Ley 210-215, 30 LPRA sec. 6088:

> La hipoteca se extiende a las accesiones naturales, a las mejoras y al importe de las indemnizaciones concedidas o debidas al propietario por los aseguradores de los bienes hipotecados o en virtud de expropiación forzosa. Se extiende además al exceso de cabida de la finca hipotecada, aunque la misma se haya hecho constar en el Registro con posterioridad a la inscripción de aquélla.

Cónsono, también se entenderán hipotecadas junto con la finca, aunque no sean mencionadas en el contrato siempre que correspondan al propietario, "[l]as mejoras que consistan en nuevas plantaciones, obras de riego o desagüe, obras de reparación, seguridad, transformación, comodidad, adorno, elevación de edificios, o cualquiera otras semejantes, y la agregación de terrenos por accesión natural", como también "[l]as indemnizaciones concedidas o debidas al propietario de los inmuebles hipotecados, bien

por el aseguramiento de éstos siempre que haya tenido lugar el siniestro después de constituida la hipoteca, o bien por la expropiación forzosa". Art. 62 de la Ley Hipotecaria, 30 LPRA sec. 6089.

Finalmente, salvo pacto expreso o disposición legal en contrario, la hipoteca no comprenderá: los objetos muebles colocados de forma permanente en la finca hipotecada, ya sean para su adorno, comodidad o explotación, o bien para el servicio de alguna industria, a menos que no puedan separarse sin quebranto de la materia o deterioro del objeto; los frutos, cualquiera que sea la situación en que se encuentren; las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación garantizada, y las nuevas edificaciones donde antes no las hubiera. Art. 63 de la Ley Hipotecaria, 30 LPRA sec. 6090.

## C.

En nuestro ordenamiento inmobiliario, según lo establece el Art. 195 de la Ley Hipotecaria, 30 LPRA sec. 6311, la rectificación de cabida de alguna finca inscrita puede hacerse constar en el Registro a través de uno de tres (3) métodos:

1.  Mediante sentencia firme dictada en un procedimiento ordinario de deslinde judicial o fijación de cabida.

2.  Por escritura pública cuando se trate de disminución de cabida irrespectivamente de la cantidad de la disminución o en casos de exceso de cabida no mayor del veinte por ciento (20%) de la cabida registrada. […]

3.   Mediante expediente de dominio, por todo el exceso, cuando éste sea mayor del veinte por ciento (20%). […]

De otro lado, el Art. 214 de la Ley Hipotecaria, 30 LPRA sec. 6354, establece que:

Los errores cometidos por el Registrador al extender un asiento podrán ser corregidos, **siempre que no afecten derechos de titulares inscritos**, bien de oficio o a solicitud de parte interesada, y siempre que se tenga a la vista el instrumento o la imagen digital del instrumento que motivó la acción.

**Cuando la rectificación pudiera afectar derechos de titulares inscritos se exigirá el consentimiento de éstos para corregir el error o una resolución judicial ordenando la corrección del asiento.** (Énfasis suplido).

Entiéndase, como regla general, un error en el asiento de presentación puede ser corregido por el Registrador, motu proprio, "cuando de la inscripción principal surge el error y la información necesaria para rectificarlo". Gasolinas PR v. Registrador, 155 DPR 652, 682-683 (2001). Sin embargo, el ejercicio de tal facultad no procede cuando la corrección pueda afectar los derechos de titulares inscritos, pues, "[e]n ningún caso la rectificación del Registro perjudicará los derechos legítimamente adquiridos por tercero que reúna las condiciones fijadas en esta ley". Íd., pág. 684.

Expuesto el Derecho pertinente, procedemos a discutir su aplicación a esta controversia.

### III

Según se adelantó, por tratarse de una sentencia sumaria, este Tribunal debe evaluar de novo las solicitudes

a favor y en contra de tal proceder, junto con la prueba documental que obra en el expediente. Tal ejercicio tiene el fin de determinar si los foros recurridos actuaron correctamente al concluir que procedía una sentencia por la vía sumaria por no existir alguna controversia de hecho que impidiera la ejecución de hipoteca solicitada.

Un análisis detenido de la documentación que surge del expediente ante nuestra consideración nos obliga a concluir que el Tribunal de Primera Instancia y el Tribunal de Apelaciones erraron al determinar que procedía la resolución sumaria de la controversia a pesar de la incongruencia en la documentación con respecto a la cabida del inmueble. Veamos.

En su Demanda, el BPPR describió la finca cuya ejecución solicitó de la manera siguiente:

> URBANA: Solar en forma rectangular que mide doce (12) metros de frente por veintiún (21) metros de fondo marcado con el número treinta (30) del bloque DJ de la Urbanización Puerto Nuevo, propiedad de la Everlasting Development Corporation, localizado en el Barrio Monacillos del Municipio de Río Piedras, Puerto Rico, **con un área de doscientos cincuenta y dos (252.00) metros cuadrados.** En lindes por el Norte, Sur, Este y Oeste, con [te]rrenos propiedad de la Everlasting Development Corporation, y dando frente al Sur con la calle denominada veintitrés (23) de la Urbanización. Enclava una casa.[4]

Tal descripción es idéntica a la que surge de la Escritura Núm. 259 con fecha de 29 de agosto de 2003, la

---

[4] (Negrilla suplida). Apéndice de Petición de certiorari, pág. 59.

cual consigna la hipoteca y acompañó la petición de ejecución del BPPR.[5] Esta consta inscrita en el Registro de la Propiedad como inscripción **18** al folio 166 del tomo 939 de Monacillos.[6]

Oportunamente, la Corporación trajo a la atención del Tribunal de Primera Instancia una inconsistencia en la cabida del inmueble según fue descrita en la Demanda y en la documentación que le acompañó, y conforme se desprendía del propio Registro. En específico, la Certificación de propiedad inmueble despachada el 28 de diciembre de 2016, describió la finca de la siguiente manera:

> Urbana: URBANIZACIÓN PUERTO NUEVO de Monacillos. Solar: 30-DJ. **Cabida: 252 Metros Cuadrados**. Norte, Sur, Este y Oeste, con terrenos propiedad de la Everlasting Development Corporation, y dando frente al Sur con la calle denominada número 23 de la urbanización. Enclava una casa de bloques de cemento y hormigón reforzado, que consta principalmente de dos dormitorios, sala-comedor, cocina y cuarto de baño.[7]

No obstante, esta consignaba la observación que se transcribe a continuación:

> Observación: Según la inscripción **9ª** la cabida de esta finca es ahora de 600.00 m/c en virtud de Expediente de Posesión, dado en el Tribunal Superior de Puerto Rico, Sala de San Juan, el 8 de marzo de 1974 en el Caso Civil número 72-4462 inscrito al folio 110 vto del tomo 482 de Monacillos.[8]

---

[5] Íd., pág. 80.

[6] Íd., pág. 104.

[7] (Negrilla suplida). Íd., pág. 104.

[8] (Negrilla suplida). Íd., pág. 105.

Ahora, en una <u>Certificación de propiedad inmueble</u> subsecuente con fecha de 28 de noviembre de 2018, la descripción de la finca fue alterada por el Registrador de la Propiedad, el Hon. Franklin Avilés Santa, para reflejar lo siguiente:

> Número de Catastro: ---. Urbana: URBANIZACIÓN PUERTO NUEVO de Monacillos. Solar: 30-DJ. **Cabida: 600 Metros Cuadrados.** Norte, Sur, Este y Oeste, con terrenos propiedad de la Everlasting Development Corporation, y dando frente al Sur con la calle denominada número 23 de la urbanización. **Según inscripción novena, mediante Resolución Judicial de 8 de marzo de 1974, en Caso Civil 72-4462 sobre Expediente Posesorio, este solar se extiende por la parte de atrás, o sea, su fondo en 29.00 metros, con un área de 348.00 metros cuadrados que sumados a los 250.00 metros cuadrados que resultan de la inscripción 1ra, hacen un área de 600.00 metros cuadrados.** Enclava una casa de bloques de cemento y hormigón reforzado, que consta principalmente de dos dormitorios, sala-comedor, cocina y cuarto de baño.[9]

Así las cosas, el 8 de marzo de 2019, el Registrador de la Propiedad consignó otra nota marginal:

> Nota marginal 18.1
> Transacción: Advertencia a terceros
> Aclaración: Se aclara la presente inscripción para hacer constar que por error e inadvertencia del Registro se expresó que la cabida de la finca era de 252.00 metros cuadrados, cuando lo correcto es una cabida de 600.00 metros cuadrados, según surge de la inscripción 9na, en virtud de Expediente de Posesión, en el Tribunal Superior de Puerto Rico, Sala de San Juan, el 8 de marzo de 1974 en el Caso Civil número 72-4462. Se aclara además, la Nota Marginal A.1 para hacer constar que los 600.00 metros de la cabida de la finca surgen de la

---

[9](Negrilla suplida). Íd., pág. 116.

inscripción 9na que fue inscrita el 25 de agosto de 1974.[10]

Por su parte, el BPPR sostuvo que esta nota aclaratoria del Registrador tuvo el efecto de corregir el error de cabida en la Escritura Núm. 259 inscrita, extendiendo el efecto de la hipoteca a la totalidad del inmueble, es decir, a los 600 metros cuadrados y no solo a los 252 metros consignados. Tal argumento fue acogido tanto por el Tribunal de Primera Instancia como el Tribunal de Apelaciones. No les asiste la razón.

Tal y como se indicó previamente, un Registrador de la Propiedad puede, en efecto, corregir errores en un asiento. No obstante, el ejercicio de tal facultad procede siempre y cuando no se afecten los derechos de los titulares. Por consiguiente, cuando tal corrección puede tener la consecuencia de afectar derechos de titulares inscritos, conforme establecimos en Gasolinera PR v. Registrador, supra, pág. 683, "antes de proceder con cualquier rectificación de las constancias en el Registro, tiene que haber sido auscultado el consentimiento de estos titulares cuyos derechos pudieran verse afectados por la rectificación". Íd. En su defecto, "deberá el Registrador o la parte que solicita la corrección obtener resolución judicial a tal efecto para ordenar la corrección del asiento". Íd.

---

[10]Íd., pág. 128.

Nótese que ello no ocurrió en este caso. Por el contrario, el Registrador de la Propiedad unilateralmente emitió una serie de observaciones y anotaciones que desembocaron en una nota aclaratoria que pretendía corregir el error en la cabida en una inscripción de un contrato hipotecario. Ello así fundamentado en la información que surgía con respecto a la cabida de una inscripción que precedía a aquella a la cual le fue añadida la nota. No surge del expediente o de la comparecencia de alguna de las partes que esta fuera extendida con el consentimiento de los titulares inscritos o mediando alguna resolución judicial ordenando la corrección del asiento. Véase, Art. 214 de la Ley Hipotecaria, supra.

Ciertamente, el derecho del titular sobre los 348 metros cuadrados que fueron excluidos del contrato hipotecario se vería afectado de extenderse el efecto de la hipoteca sobre tal cabida de la forma antes descrita. Por lo cual, en ausencia de consentimiento previo a modificar la extensión de la hipoteca a la totalidad de la cabida, este Tribunal está imposibilitado de validar la interpretación de los foros recurridos con respecto al efecto corrector de la nota aclaratoria del Registrador de la Propiedad sobre la cabida del inmueble en la inscripción de la hipoteca.

La necesidad de completar tal requerimiento se agudiza al señalar que, contrario a lo determinado por el foro

apelativo intermedio, los 348 metros cuadrados que fueron excluidos tanto del contrato hipotecario como de la Demanda no fueron producto de alguna de las circunstancias que, de ordinario, son consideradas como extensiones naturales del gravamen. Es decir, en concordancia con el Art. 61 de la Ley Hipotecaria, supra, la diferencia en la cabida no se trató de una accesión natural, una mejora, el importe de una indemnización o una expropiación forzosa. Recuérdese, según se relató, los metros cuadrados en cuestión fueron producto de un esfuerzo humano concertado para ganarle terreno a un mangle mediante el secado del área y su subsecuente relleno de tierra.[11] Es decir, no fue una accesión.

De hecho, tampoco se trata de un exceso de cabida que se hubiera hecho constar en el Registro con posterioridad a la inscripción de la hipoteca. De nuevo, la resolución judicial que aumentó la cabida precedió en inscripción a la de la hipoteca en el Registro, siendo esta del 1974 y la novena inscripción y la Escritura Núm. 259 del 2003 la decimoctava.[12]

---

[11]Íd., pág. 165.

[12]Es necesario señalar que emergen inconsistencias en la cabida de la propia documentación que produjo Doral Mortgage Corporation durante el proceso de evaluación y constitución de hipoteca. Un Plot plan con fecha de 11 de julio de 2003 indica la evaluación de una cabida de 600 metros cuadrados, sin embargo, tal métrica está circulada en bolígrafo y contiene una nota que indica: "Favor corregir los metros cuadrados." Íd., pág. 139. Un segundo Plot plan con la misma fecha identifica 252 metros cuadrados de cabida. Íd., pág. 136. De igual forma, el Estudio de título, la Solicitud de tasaciones y el Property Value Analysis

Conforme se discutió, la sentencia sumaria solo procede cuando no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Es decir, procede cuando hay una inexistencia total de controversias sustanciales de hechos esenciales y pertinentes, siendo estos aquellos que podrían afectar el resultado de la reclamación de conformidad con el derecho aplicable.

En este caso, los Tribunales recurridos concluyeron que no existía alguna controversia de hecho esencial porque el error en la cabida del inmueble en el contrato hipotecario había sido corregido por la nota aclaratoria que consignó el Registrador de la Propiedad. A esto añadieron que era evidente que la intención había sido pactar sobre la totalidad del terreno, a pesar de que no se desfiló prueba al respecto más allá del propio contrato hipotecario.

A la luz de esto, el estado de Derecho nos obliga a expresar de forma contundente que la nota aclaratoria del Registrador de la Propiedad, sin mediar consentimiento de las partes o una resolución judicial ordenando la corrección del asiento, no puede tener el efecto de enmendar un error de cabida en un contrato hipotecario por ello incidir sobre los intereses y derechos del titular. En consecuencia,

---

Report indican una cabida de 252 metros cuadrados. Íd., págs. 137, 140 y 142.

tampoco procede la resolución sumaria por ser la verdadera extensión de la hipoteca un hecho esencial en controversia que exige el desfile de prueba en un juicio en su fondo.

**IV**

Por los fundamentos expresados, se revoca el dictamen recurrido por ser improcedente la resolución sumaria de la controversia. En consecuencia, se retorna el asunto a la consideración del Tribunal de Primera Instancia para la celebración de un juicio en su fondo en acorde con los lineamientos aquí establecidos.

Se dictará Sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Popular de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Laureano Zorrilla Posada; La Corporación Manny Dávila, Inc.<br><br>Peticionarios | CC-2023-0332 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 17 de junio de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca el dictamen recurrido por ser improcedente la resolución sumaria de la controversia. En consecuencia, se retorna el asunto a la consideración del Tribunal de Primera Instancia para la celebración de un juicio en su fondo en acorde con los lineamientos aquí establecidos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo