Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| CARLOS J. CHIESA CEDÓ<br><br>Apelante<br><br>v.<br><br>FANOVIDAL, S.E.; Y CONSEJO DE TITULARES DEL CONDOMINIO EL CANTÓN MALL<br><br>Apelados | KLAN202500289 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2023CV02913<br><br>Sobre: Reivindicación y enriquecimiento injusto |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2025.

Comparece ante nos la parte apelante, Carlos J. Chiesa Cedó, y nos solicita que revoquemos la *Sentencia* emitida el 4 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 7 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la *Moción de Sentencia Sumaria* promovida por la parte apelada, Fanovidal, S.E. En su consecuencia, desestimó y archivó con perjuicio una demanda sobre reivindicación y enriquecimiento injusto incoada por la parte apelante.

Por los fundamentos que exponemos a continuación, se revoca el dictamen apelado. Veamos.

## I

El 25 de mayo de 2023, Carlos J. Chiesa Cedó (Chiesa Cedó o apelante) incoó una *Demanda,*[1] posteriormente enmendada en dos

---

[1] Apéndice del recurso, págs. 99-104.

Número Identificador

SEN2025 _____

ocasiones,[2] sobre reivindicación y enriquecimiento injusto en contra de Fanovidal, S.E. (Fanovidal o apelado). Indicó que Fanovidal detentaba la posesión de una porción de la Finca Chiesa que colinda con la Finca Fanovidal donde ubica el estacionamiento del centro comercial Cantón Mall en Bayamón. Alegó que dicha franja de terreno le pertenecía. Adujo que, en varias ocasiones, le solicitó a Fanovidal que devolviera el terreno invadido, en vista de que realizó una mensura de su finca y se reflejó que Fanovidal no había ubicado la verja en el lugar que indicaba la *Sentencia* dictada el 6 de marzo de 2007 en el Caso Núm. DAC2004-2662. Señaló que, en dicho dictamen, el Tribunal de Primera Instancia dispuso que Fanovidal debía devolverle al apelante los 338.4012 metros cuadrados que indebidamente quedaron como parte de la propiedad de Fanovidal. Añadió que, en su consecuencia, el foro primario le ordenó a Fanovidal a que moviera la verja para que quedara ubicada en los puntos marcados con los números 561 y 560 en el plano del agrimensor Roberto Cabrera Vilá (Cabrera Vilá). En vista de que interesaba recuperar la posesión del inmueble, Chiesa Cedó le solicitó al foro primario que ordenara a Fanovidal a devolver la franja de terreno de la Finca Chiesa que ocupó ilegalmente.

Por su parte, el 26 de marzo de 2024, Fanovidal presentó *su* alegación responsiva.[3] En síntesis, sostuvo que adquirió su finca el 5 de junio de 2001 de la sucesión Viner, bajo el entendimiento de buena fe de que la totalidad del terreno que se encontraba dentro del predio cercado pertenecía al vendedor. Alegó que adquirió la titularidad de las franjas de terreno por prescripción adquisitiva, toda vez que había poseído de buena fe, con justo título, y de forma ininterrumpida, pública, pacífica, y en concepto de dueño –a lo mínimo desde el 11 de febrero de 2008– cuando la verja entre ambas

---

[2] Apéndice del recurso, págs. 92-98, 75-81.
[3] Íd., págs. 64-74.

fincas se reubicó, luego de emitida la sentencia del foro *a quo* en el Caso Núm. DAC2004-2662. Añadió que Chiesa Cedó conocía dónde se había reubicado la verja en el año 2008 y no fue hasta el año 2022 que alegó que todavía invadía una porción de la Finca Chiesa.

Posteriormente, el 21 de enero de 2025, Fanovidal instó una *Moción de Sentencia Sumaria*.[4] En síntesis, alegó que no había controversia en cuanto a que adquirió la Finca Fanovidal el 5 de junio de 2001, mediante justo título y de buena fe, bajo la creencia razonable de que el terreno que se encontraba dentro de la verja al momento de la compraventa le pertenecía al vendedor. Asimismo, adujo que tampoco había controversia en cuanto a que, desde al menos el 11 de febrero de 2008, la verja oeste de la Finca Fanovidal se reubicó al lugar donde ambas partes entendían que se debía reubicar conforme a la *Sentencia* dictada el 6 de marzo de 2007 en el Caso Núm. DAC2004-2662, pues así lo admitió el propio Chiesa Cedó. Aseguró que este último había reconocido que, desde que se reubicó la verja luego de emitida la referida *Sentencia*, entendió que el problema de la invasión se había resuelto. Además, sostuvo que no había controversia respecto a que, desde en o antes del 11 de febrero de 2008 hasta el 24 de mayo de 2022, Chiesa Cedó no reclamó a Fanovidal que la verja no se había reubicado donde correspondía según la mencionada *Sentencia*. Alegó que tampoco había controversia respecto a que poseyó de buena fe, con justo título, y de forma ininterrumpida, pública, pacífica, y en concepto de dueño, el terreno que quedó dentro de la Finca Fanovidal. Por tal razón, adujo que el pedazo de la Finca Chiesa que quedó dentro de la verja oeste le pertenecía por usucapión o prescripción adquisitiva.

---

[4] Apéndice del recurso, págs. 24-63. Junto a su moción, Fanovidal presentó los siguientes documentos: (1) copia de la *Sentencia* del Caso Núm. DAC2004-2662, emitida el 6 de marzo de 2007; (2) copia de la Escritura Número Cinco de Compraventa, suscrita el 5 de junio de 2001; (3) copia de la *Declaración Jurada* suscrita por María M. Reyes Vidal, el 21 de enero de 2022. Véase, Apéndice del recurso, págs. 31-63.

A tales efectos, solicitó que se desestimara con perjuicio la acción de epígrafe. Solicitó, además, que se declarara que adquirió la titularidad del terreno por usucapión o prescripción adquisitiva.

En respuesta, el 18 de febrero de 2025, Chiesa Cedó se opuso.[5] En esencia, señaló que, bajo el entendido de que Fanovidal actuaría de buena fe y en cumplimiento con la *Sentencia* dictada el 6 de marzo de 2007 en el Caso Núm. DAC2004-2662, supuso que Fanovidal reubicó la verja en los puntos correctos. Según adujo, no fue hasta el año 2022 que descubrió que se reubicó la verja dentro de la Finca Chiesa. Además, sostuvo que Fanovidal no había poseído el terreno de buena fe y con justo título, toda vez que la *Sentencia* del 6 de marzo de 2007 resolvió que Chiesa Cedó era dueño de la Finca Chiesa y que el vendedor Viner carecía de facultad en ley para transferir el título de dicho terreno. Asimismo, añadió que la referida *Sentencia* específicamente indicó dónde Fanovidal venía obligado a reubicar la verja y que el plano de mensura, preparado por el propio agrimensor de Fanovidal, señaló gráficamente los puntos donde se debió ubicar la verja. Ante las circunstancias descritas, Chiesa Cedó sostuvo que Fanovidal incumplió con los requisitos indispensables de la figura de usucapión ordinaria. En virtud de lo anterior, solicitó que se denegara la solicitud de sentencia sumaria de Fanovidal y que se dictara sentencia sumaria a su favor, ordenando a Fanovidal a devolverle el terreno que ocupó ilegalmente.

Evaluadas las posturas de las partes, el 4 de marzo de 2025, notificada el 7 del mismo mes y año, el foro primario emitió la *Sentencia Sumaria* que nos ocupa.[6] En esta, desglosó las siguientes determinaciones de hechos:

1. El Dr. Chiesa es dueño de la Finca Chiesa, la cual ubica en Bayamón, Puerto Rico.

---

[5] Apéndice del recurso, págs. 13-23. Junto a su moción, Chiesa Cedó presentó una copia de la *Declaración Jurada* suscrita por este el 18 de febrero de 2025. Véase, Apéndice del recurso, págs. 22-23.

[6] Apéndice del recurso, págs. 2-12

2. El Dr. Chiesa no es un dueño ausente de la Finca Chiesa, pues el Dr. Chiesa es "doctor de profesión con oficina sita en Instituto San Pablo, Suite 409, Calle Sta. Cruz Núm. 66, Bayamón, PR."

3. El 5 de junio de 2001, FSE adquirió la Finca FSE por compra de la Sucesión Viner, mediante la Escritura Pública de Compraventa Número 5 de 5 de junio de 2001.

4. Cuando FSE compró la Finca FSE a la Sucesión Viner, ya la Finca FSE estaba cercada, había estado así cercada desde al menos el 1997 y, desde que se había cercado al menos desde el 1997, el pedazo en controversia de la Finca Chiesa había quedado dentro de la verja oeste de la Finca FSE.

5. Los miembros y/o causantes de la Sucesión Viner eran dueños de la Finca FSE desde al menos el 1994.

6. El 4 de agosto de 2004, el Dr. Chiesa comenzó el Primer Caso, alegando que la verja oeste de la Finca FSE se había extralimitado, por lo que aproximadamente 338.4012 metros cuadrados de la Finca Chiesa habían quedado dentro de la verja oeste de la Finca FSE.

7. **El 6 de marzo de 2007, este Tribunal emitió su [S]entencia en el Primer Caso, ordenando que la verja oeste de la Finca FSE se reubicase en ciertos puntos específicos.**

8. En o antes del 11 de febrero de 2008, FSE causó que la verja oeste de la Finca FSE se reubicase al lugar donde FSE y el Dr. Chiesa, ambos, entendían que, conforme la [S]entencia en el Primer Caso, había que reubicar la verja oeste de la Finca FSE.

9. Desde que FSE reubicó la verja oeste de la Finca FSE allá para en o antes del 11 de febrero de 2008, el Dr. Chiesa "entendió que el problema de la invasión se había resuelto."

10. Entre el 11 de febrero de 2008 y el 24 de mayo de 2022, el Dr. Chiesa nunca notificó o reclamó a FSE que la verja oeste de la Finca FSE no estuviese donde tanto FSE como el Dr. Chiesa entendían que dicha verja debía estar conforme la [S]entencia en el Primer Caso.

11. Desde al menos el 11 de febrero de 2008 y hasta el 25 de mayo de 2022, FSE ha estado en posesión y ha estado ocupando y utilizando, en calidad de dueño, pública, pacífica e ininterrumpidamente, todo el terreno que quedó dentro de la Finca FSE desde que se reubicó la verja oeste de la Finca FSE para dar cumplimiento a la [S]entencia en el Primer Caso allá para antes del 11 de febrero de 2008, incluyendo el pedazo de la Finca Chiesa que quedó dentro de la verja oeste de la Finca FSE.

12. A principios de 2022, el Dr. Chiesa se percató que la verja oeste de la Finca FSE no se había ubicado donde se debía haber ubicado conforme la Sentencia y que, por tanto, un pedazo de la Finca Chiesa todavía había quedado dentro de la verja oeste de la Finca FSE.

13. El 25 de mayo de 2022, el Dr. Chiesa por primera vez desde antes del 11 de febrero de 2008, notificó y reclamó a FSE que la verja oeste de la Finca FSE no se había ubicado donde se debía haber ubicado

conforme la Sentencia y que, por tanto, un pedazo de la Finca Chiesa todavía había quedado dentro de la verja oeste de la Finca FSE. (Énfasis nuestro).

El foro primario concluyó que Fanovidal adquirió la Finca Fanovidal el 5 de junio de 2001, mediante justo título y de buena fe, bajo la creencia razonable de que el terreno que se encontraba dentro de la verja al momento de la compraventa le pertenecía al vendedor. Asimismo, particularizó que tampoco estaba en controversia que, desde al menos el 11 de febrero de 2008, la verja oeste de la Finca Fanovidal se reubicó donde ambas partes entendían que la verja se tenía que reubicar, conforme a la *Sentencia* del 6 de marzo de 2007 en el Caso Núm. DAC2004-2662. En su consecuencia, razonó que no había controversia respecto a que, desde en o antes del 11 de febrero de 2008 hasta el 24 de mayo de 2022, Chiesa Cedó no reclamó a Fanovidal que la verja oeste de la Finca Fanovidal no se había reubicado en donde correspondía según la *Sentencia* y que parte de la Finca Chiesa todavía estaba dentro de la Finca Fanovidal. Es decir, determinó que no había controversia en cuanto a que Fanovidal había estado en posesión y ocupando ininterrumpidamente, en carácter de dueño, de forma pública y pacífica, la parte de la Finca Chiesa en disputa desde al menos el 11 de febrero de 2008. En virtud de lo anterior, resolvió que la franja de terreno de la Finca Chiesa que quedó dentro de la Finca Fanovidal pertenecía a Fanovidal por usucapión o prescripción adquisitiva. Por consiguiente, el foro primario concluyó que no había controversia genuina de hechos esenciales y pertinentes, por lo que declaró Ha Lugar la *Moción de Sentencia Sumaria* promovida por Fanovidal y, en su consecuencia, desestimó y archivó con perjuicio la causa de acción de epígrafe.

Inconforme, el 7 de abril de 2025, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

Erró el TPI al haber resuelto el caso por la vía sumaria, al haber derivado inferencias a favor de Fanovidal y a pesar de que existían controversias sobre varios de los hechos medulares.

Erró el TPI al concluir que Fanovidal había adquirido el predio de terreno en controversia mediante usucapión ordinaria a pesar de que Fanovidal no satisfizo ni puede satisfacer los requisitos de haber actuado de buena fe y a título de dueño.

En cumplimiento con nuestra *Resolución* del 10 de abril de 2025, la parte apelada compareció mediante *Alegato de Parte Apelada de FSE* el 7 de mayo de 2025.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204

DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,*

pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de

su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018);

*Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario

aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.,* supra.

**B**

La propiedad o dominio es el derecho real mediante el cual una cosa pertenece a una persona con exclusión de cualquier otra, con la facultad que le asiste de gozar y disponer de la misma sin mayores limitaciones que las impuestas por ley. Art. 280 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1111.[7] Conforme reconoce la doctrina vigente, el derecho de propiedad, así como los demás derechos reales, se adquiere, entre otras formas, mediante la prescripción adquisitiva o usucapión. Art. 549 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1931; Art. 1830 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5241; *Adm. Terrenos v. SLG Rivera-Morales,* 187 DPR 15 (2012). La adquisición del dominio, que por esta vía se produce, supone el transcurso del término fijado por ley, unido al cumplimiento de determinados criterios establecidos por el ordenamiento jurídico. De este modo, concurridos los mismos, se consolida o materializa el dominio en la persona que, unido a las dueñas anteriores, ha poseído el bien por el término dispuesto. *Adm. Terrenos v. SLG Rivera-Morales,* supra. Así, esta adquiere el derecho correspondiente, mientras se extingue el de otra persona o antiguo dueño. *Silva Wiscovich v. Weber Dental Mfg. Co.,* 119 DPR 550 (1987).

El estado de derecho en la materia que atendemos distingue entre la prescripción ordinaria y la extraordinaria. En ambos tipos de usucapión se requiere una posesión ininterrumpida, pública, pacífica, y en concepto de dueña por el término fijado en la ley. *Adm. Terrenos v. SLG Rivera-Morales,* supra. No obstante, para la

---

[7] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley. Art. 1840 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5261. El concepto buena fe consiste en la creencia la persona poseedora de que la persona de quien recibió la cosa era su dueña y que podía transmitir su dominio. Art. 1850 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5271; *Bravman, González v. Consejo Titulares*, 183 DPR 827, 838 (2011). Por su parte, el *justo título* se define como aquel que es legalmente suficiente para transferir el dominio o derecho real de cuya prescripción se trate. Art. 1852 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5273. Por otro lado, la prescripción adquisitiva en su modalidad extraordinaria "se caracteriza por la inexistencia de estos requisitos que se suplen por la exigencia de un plazo más largo de posesión". *Adm. de Terrenos v. SLG Rivera-Morales*, supra, citando a J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales*, Madrid, Ed. Offirgraf, T. II, 1983, pág. 265.

El plazo o término de tiempo requerido para que se adquiera la propiedad mediante la prescripción ordinaria es distinto al de la prescripción extraordinaria. El dominio y demás derechos reales sobre bienes inmuebles prescriben por la posesión durante diez (10) años entre presentes y veinte (20) entre ausentes, con buena fe y justo título. Art. 1857 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5278. Lo anterior implica el que exista una creencia pública general en cuanto a que la persona poseedora, en efecto, es la titular del bien, ello dados los actos que ejecuta en cuanto al mismo. *Adm. Terrenos v. SLG Rivera-Morales,* supra; *Bravman, González v. Consejo Titulares,* supra. Por tanto, la posesión que da lugar a la usucapión o prescripción adquisitiva es aquella que nuestro ordenamiento denomina posesión civil, tenencia o disfrute de una cosa o derecho, unida a la intención de hacerlos como suyos.

*Íd.* Por otro lado, prescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta (30) años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes. Art. 1859 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5280.

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al haber resuelto el caso por la vía sumaria, a pesar de que existían controversias sobre varios de los hechos medulares. En su segundo señalamiento de error, plantea que el foro primario incidió al concluir que Fanovidal había adquirido el predio de terreno en controversia mediante usucapión ordinaria, a pesar de que Fanovidal no satisfizo los requisitos de buena fe y a título de dueño. Por estar relacionados entre sí, discutiremos los referidos errores conjuntamente.

Hemos examinado cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, y concluimos que el foro *a quo* incidió en su determinación. Nos explicamos.

Sabido es que, ante una solicitud de sentencia sumaria, esta Curia se encuentra en igual posición para efectuar un análisis *de novo* de los petitorios sumarios sometidos ante la consideración del foro primario. Entre los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia, se encuentra el revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos

materiales encontró que están en controversia y cuáles están incontrovertidos.

Tras evaluar cuidadosamente *de novo* la totalidad del expediente ante nos, colegimos que existe controversia de hechos materiales que impiden la resolución sumaria de la acción de epígrafe. De la propia solicitud de sentencia sumaria promovida por Fanovidal, surge claramente que existe una controversia genuina sobre la buena fe de la parte apelada, elemento esencial para determinar si es de aplicación la usucapión ordinaria o extraordinaria. Si bien la buena fe se presume, de los documentos del petitorio sumario, específicamente de la *Sentencia* emitida por el Tribunal de Primera Instancia el 6 de marzo de 2007, surge que Fanovidal conocía claramente el lugar donde debía mover la verja en cuestión luego del pleito que se dilucidó en el Caso Núm. DAC2004-2662. En particular, el foro primario ordenó en la referida determinación que Fanovidal tenía que:

> devolver [a Chiesa Cedó] los 338.4012 metros cuadrados que indebidamente quedaron como parte de la propiedad [de Fanovidal], y a su costo removerá el asfalto que existe en la franja de terreno ocupada y **moverá la verja para que [e]sta quede ubicada en los puntos marcados con los números 561 y 560 en el plano del [a]grimensor Roberto Cabrera Vilá**[.] (Énfasis nuestro).

De lo anterior, no hay margen de duda ni de incertidumbre del lugar donde Fanovidal debía mover la verja en controversia. Cabe destacar que el agrimensor Cabrera Vilá fue el perito de Fanovidal en el Caso Núm. DAC2004-2662, así que el apelado tenía acceso a información pericial que indicaba el lugar exacto al que debía mover la verja y que, evidentemente, no lo hizo. De los autos tampoco surge un ápice de duda de que Fanovidal actuó contrario a lo expresamente ordenado por el foro de origen. Por lo tanto, lo anterior derrota por completo la presunción de buena fe que acobijaba a Fanovidal.

Fanovidal arguyó en su solicitud de sentencia sumaria que la verja se movió donde las partes "entendían" que iba. Asimismo, se escudó en el hecho de que Chiesa Cedó tardó años en indicar que la verja en cuestión se puso donde no iba, pues este admitió que presumió la buena fe y el cumplimiento de Fanovidal. Sin embargo, ello no son fundamentos que impiden que se derrote la presunción de buena fe, según discutimos en el párrafo anterior. Ello no subsana el hecho de que existe una orden clara de un tribunal que detalló, sin lugar a duda ni ambigüedades, el lugar exacto en donde debía ir la verja. El cumplimiento de dicho dictamen era obligación de Fanovidal, no de Chiesa Cedó.

En virtud de lo anterior, ante las propias actuaciones de incumplimiento de Fanovidal después de emitido el referido dictamen, y al este tener pleno conocimiento respaldado por una opinión pericial contratada por él y avalada por el tribunal, resulta forzoso concluir que la presunción de buena fe del apelado fue rebatida por los propios documentos anejados en la solicitud de sentencia sumaria presentada por este. En ese sentido, evidentemente, las determinaciones de hechos 8 y 10 permanecen en controversia y requieren la celebración de un juicio plenario.

**IV**

Por los fundamentos que anteceden, revocamos la *Sentencia* apelada. En consecuencia, devolvemos el caso al foro de origen para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones