Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CONSEJO DE TITULARES DEL CONDOMINIO CHALETS LAS MUESAS Y OTROS<br><br>Peticionario<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurrido | KLCE202500578 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Sobre: Daños, Incumplimiento de Contrato<br><br>Caso Núm. CG2019CV03306 |
|---|---|---|

Panel Especial integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de junio de 2025.

La parte peticionaria, Consejo de Titulares del Condominio Chalets Las Muesas, Attenure Holdings Trust 9 y HRH Property Holdings LLC, comparece ante nos y solicita nuestra intervención a los fines de que revoquemos la determinación emitida el 14 de mayo de 2025 y notificada el 16 de mayo de 2025, por el Tribunal de Primera Instancia, Sala de Caguas. Mediante la misma, el foro *a quo* declaró *No Ha Lugar* una moción de sentencia sumaria parcial promovida por la parte peticionaria, todo dentro de una acción sobre sentencia declaratoria, incumplimiento de contrato y daños y perjuicios incoada en contra de la parte aquí recurrida, Mapfre Praico Insurance Company.

Por los fundamentos que expondremos a continuación, se expide el auto solicitado y se revoca la resolución recurrida.

### I

El 4 de septiembre de 2019, la parte peticionaria presentó la demanda de epígrafe. Mediante la misma, adujo que, como

consecuencia del paso del Huracán María por Puerto Rico, el condominio que administra sufrió severos daños en su estructura general. Específicamente, sostuvo que, para la fecha de dicho acontecimiento, estaba vigente una póliza de propiedad comercial (póliza núm. 54-CP-200004546-1) a favor del Condominio Chalets Las Muesas, para asegurar contra todo riesgo de pérdida física o daños, incluyendo aquellos causados por huracanes. Conforme expuso, a tenor con lo anterior, en octubre del año 2017, presentó una reclamación ante Mapfre, ello a fin de ejecutar los términos de la póliza en controversia.

En su demanda, la parte peticionaria sostuvo que Mapfre se rehusó a pagar lo solicitado, en contravención a los términos de la póliza y a las disposiciones aplicables al manejo de las reclamaciones de seguros en Puerto Rico. La parte peticionaria afirmó que, al entender sobre su reclamación respecto a los términos de la póliza en controversia, Mapfre incurrió en incumplimiento de lo pactado. A su vez, alegó que esta actuó contrario a los deberes de buena fe y lealtad en la contratación según prescritos en el ordenamiento jurídico, así como, también, a los términos del Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de1957, 26 LPRA sec. 101 *et seq.* De este modo, solicitó al Tribunal de Primera Instancia que resolviera a su favor y, en consecuencia, ordenara a Mapfre al pago de $6,546,702.77, por concepto de la cubierta de los daños a la propiedad reclamados contra la póliza, así como honorarios de abogados y gastos incurridos, entre otras cosas.

El 18 de diciembre de 2020, Mapfre presentó su *Contestación a la Demanda.* En esencia, negó las alegaciones de incumplimiento y prácticas desleales imputadas en su contra. Sostuvo que su determinación respecto a la reclamación objeto de litigio, obedeció a los expresos términos de la póliza. Así, y tras alegar que fue la parte

peticionaria quien actuó contrario a la cubierta, Mapfre solicitó la desestimación de la demanda de autos.

Posteriormente y culminado el descubrimiento de prueba, Mapfre notificó a la parte peticionaria el informe de ajuste, estimando los daños sufridos ascendentes a $309,384.33, luego de descontarle los deducibles y exclusiones aplicables.

Así las cosas, el 31 de julio de 2023, la parte peticionaria presentó una *Moción de Sentencia Sumaria Parcial.* En lo pertinente, expresó que no existía controversia de hechos alguna en cuanto a que, mediante el Ajuste del Informe de sus peritos, cursado en abril del año 2023, Mapfre efectuó un ajuste de su reclamación y reconoció que procedía el pago de $309,384.33. En dicho contexto, expuso que ello constituyó un reconocimiento de deuda, por lo que, en derecho, estaba impedida de retractarse de su obligación de pago. Así, y tras reafirmarse en que la cantidad ajustada de $309,384.33 era una líquida, toda vez que no existía disputa en cuanto a la misma, la parte peticionaria solicitó al tribunal de hechos que dictara sentencia sumaria parcial en el caso. Por tanto, peticionó que ordenara a la aseguradora compareciente satisfacer el pago de la antedicha suma como un adelanto parcial de su reclamación, sin que el desembolso correspondiente estuviera sujeto a condición alguna y sin que el mismo se entendiera como un pago en finiquito.[1]

El 16 de enero de 2025, Mapfre presentó su *Oposición a Moción de Sentencia Sumaria según Suplementada.* En lo atinente,

---

[1] La parte peticionaria acompañó su *Solicitud de Sentencia Sumaria Parcial* con la siguiente prueba documental: 1) copia de la póliza de seguro núm. 54-CP-200004546-1; 2) copia del documento intitulado *Aviso de Pérdida Catastrófica Huracán María*; 3) copia del "*Proof of Loss by Strategic Claim Consultants, LLC on behalf of Condominio Chalets Las Muesas"*, conjuntamente con las comunicaciones electrónicas habidas entre las partes respecto al mismo; 4) Ajuste de Mapfre; 5) *Informe Pericial* preparado por ATA Consulting, LLC; 6) *Informe Pericial* preparado por ROV Engineering Services, PSC; 7) Copia de varias sentencias emitidas por este Tribunal que, a su entender, resuelven controversias similares en los términos que plantea en el presente recurso; 8) Determinaciones emitidas por el Tribunal Supremo de Puerto Rico, denegando unas peticiones de *certiorari* referentes a los casos de *Arroyo v. Mapfre,* Res. 7 de mayo de 2021; y *Judith González Cruz v. Mapfre*, Res. 7 de mayo de 2021.

expresó que, contrario a lo aducido por la parte peticionaria, la cantidad de $309,384.33 no era de carácter líquido, toda vez que la misma nunca se aceptó de conformidad con lo resuelto en *Carpets & Rugs v. Tropical Reps,* 175 DPR 615 (2009). A su vez, Mapfre sostuvo que el ajuste cursado a la parte peticionaria no constituía una oferta de pago parcial, y fue presentado como prueba para refutar el estimado presentado por los peritos de la parte peticionaria. En el referido pliego, Mapfre sostuvo que la cantidad aquí en disputa, ni se aceptó, ni se estipuló como oferta parcial sujeta a recobro. A tenor con ello, expuso que, entre sus argumentos, la parte peticionaria expresamente manifestó su inconformidad con la suma en cuestión, hecho que, de su faz, evidenciaba la existencia de una controversia genuina en cuanto a la cantidad de la pérdida reclamada. De este modo, bajo el argumento de que la oferta de $309,384.33, no era líquida ni exigible, solicitó al Tribunal de Primera Instancia que denegara la moción de sentencia sumaria promovida por la parte peticionaria.

Tras ciertas incidencias, y luego de entender sobre las respectivas posturas de los comparecientes, el 16 de mayo de 2025, el Tribunal de Primera Instancia notificó la *Resolución* que nos ocupa. Mediante la misma, determinó que, contrario a las afirmaciones de la parte peticionaria, la oferta de $309,384.33 no era una suma líquida sujeta a ser desembolsada como pago parcial de su reclamación. Al esbozar sus fundamentos, expuso que, a tenor con lo dispuesto en el Artículo 27.166 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716f, las aseguradoras venían obligadas a emitir un pago adelantado al asegurado, únicamente en ocasión a que no existiera controversia alguna sobre la partida pertinente. En dicho contexto, expresó que, en el caso de autos, surgía que la parte peticionaria no había aceptado la cuantía contenida en el ajuste cursada por Mapfre, como la totalidad de los

daños a su propiedad. Por igual, dispuso que esta no identificó qué partidas de las reclamadas a la aseguradora no estaban en controversia, ni cuáles aún estaban en disputa. Al abundar, indicó que lo anterior distaba de los hechos adjudicados en *Carpets & Rugs v. Tropical Reps,* supra, norma que la parte peticionaria invocó para sustentar su requerimiento. En particular, sostuvo que, distinto a lo acontecido en autos, allí se produjo una aceptación parcial del ajuste remitido por la aseguradora concernida en cuanto a determinadas partidas específicas. De ese modo, concluyó que la parte peticionaria incumplió con el criterio establecido en la precitada disposición y, por ende, con legitimar su solicitud de pago parcial por la suma antes aludida.

En su pronunciamiento, el Tribunal de Primera Instancia añadió que el ajuste remitido por Mapfre a la parte peticionaria "(a) no constituyó una oferta razonable de pago de la aseguradora; (b) no fue dirigida propiamente a la parte demandante; y, (c) fue presentado como prueba documental puesta a disposición entre las partes". Así, determinó que, por no tratarse de una propuesta de transacción, y dado a que existía controversia en cuanto al monto que finalmente debería ser pagado por Mapfre, la suma aquí en disputa no podía ser considerada como una final, líquida y exigible. De esta forma, al amparo de todo lo anterior, la sala de origen declaró *No Ha Lugar* la *Moción de Sentencia Sumaria Parcial* promovida por la parte peticionaria.

Inconforme, el 28 de mayo de 2025, la parte peticionaria compareció ante nos mediante el presente recurso de *certiorari.* En igual fecha, presentó una *Moción en Auxilio de Jurisdicción,* respecto a la cual, mediante *Resolución* del 29 de mayo de 2025, ordenamos la paralización de los procedimientos en el tribunal primario.

En su recurso, la parte peticionaria formula los siguientes señalamientos de error:

Erró el TPI al declarar No Ha Lugar la *Moción de Sentencia Sumaria Parcial* relacionada al pago parcial por la cuantía del ajuste de la aseguradora, a pesar de concluir en las determinaciones de hechos que la aseguradora emitió un ajuste sobre los daños cubiertos bajo la póliza en donde determinó que la cantidad neta que procede para pago es $309,384.33.

Erró el TPI al declarar No Ha Lugar la *Moción de Sentencia Sumaria Parcial* relacionada al pago parcial por la cuantía del ajuste de la aseguradora, por:

    a) Entender que existe controversia con el ajuste, debido a que los peticionarios no han aceptado la cuantía del ajuste como la totalidad de los daños, por lo que la misma no es líquida. Esto a pesar de haber más de 33 casos de este Tribunal resolviendo que el ajuste de la aseguradora en estos casos es líquido, vencible y exigible, por lo que ha ordenado el pago del mismo.

    b) Entender que no procede la normativa de que Mapfre no puede retractarse del ajuste, ya que el ajuste provino del informe pericial de su experto, por lo que no considera que fue de una investigación y proceso realizado por la aseguradora.

    c) Entender que, contrario a lo que ha resuelto incontrovertidamente este Tribunal, la naturaleza del remedio en *Carpets & Rugs* es diferente a estos casos.

Erró el TPI al declarar No Ha Lugar la *Moción de Sentencia Sumaria Parcial* y no ordenar el pago parcial, los intereses por mora, intereses legales post sentencia y honorarios de abogado.

Luego de examinar el expediente que nos ocupa, procedemos a expresarnos.

## II

### A

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1;

*Oriental Bank v. Caballero García,* 212 DPR 671, 678-679 (2023); *Camaleglo v. Dorado Wings, Inc.,* 118 DPR 20, 25 (1986).

Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa de que trate. *Consejo Tit. V. Rocca Dev. Corp., et als.,* 2025 TSPR 6, 215 DPR ___ (2025); *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR ___ (2025); *BPPR v. Zorrilla y otro,* 2024 TSPR 62, 214 DPR ___ (2024). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 980 (2022). De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Soto y otros v. Sky Caterers*, supra; *Roldán Flores v. M.*

*Cuebas et al.,* 199 DPR 664, 676 (2018); *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 912 (1994).

Al evaluar una solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA*, supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617-618 (1990). Lo anterior, responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atiende. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808-809 (2020). Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr Bravo,* supra, págs. 334-335.

El Tribunal Supremo de Puerto Rico, en *Meléndez González v. M. Cuebas,* supra, estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, el Tribunal Supremo expresó en el caso antes aludido:

> *Primero*, reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no

puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

*Segundo*, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

*Tercero*, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.* Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

*Cuarto*, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**B**

Debido a que la industria de seguros está revestida del más alto interés público, es regulada extensamente por el Estado. *Consejo Tit. V. Rocca Dev. Corp., et als.,* supra; *Soto y otros v. Sky Caterers,* supra; *BPPR v. Cable Media,* supra; *Carrasquillo Pérez, et. al. v. CSM,* 2024 TSPR 101, 214 DPR ___ (2024); *Barreto Nieves at al. v. East Coast,* 213 DPR 852, 862-863 (2024); *Carpets & Rugs v. Tropical Reps,* supra, pág. 632. El Código de Seguros de Puerto Ricio, Ley Núm. 77 del 19 de junio de 1957, según enmendada, 26 LPRA sec. 101, *et seq.,* es la ley especial a través de la cual se reglamentan las prácticas y requisitos de la industria de los seguros. *Carpets & Rugs v. Tropical Reps,* supra. El Código Civil le sirve de

fuente de derecho supletorio. *Jiménez López et al. v. SIMED,* 180 DPR 1, 8 (2010); *Banco de la Vivienda v. Pagán Ins. Underwriters,* 111 DPR 1, 6 (1981).

El contrato de seguros es aquel "mediante el cual una persona se obliga a indemnizar a otra o pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102; *Carrasquillo Pérez, et. al. v. CSM,* supra; *Barreto Nieves at al. v. East Coast,* supra, pág. 863; *Feliciano Aguayo v. MAPFRE,* 207 DPR 138, 148 (2021). En estos contratos, "el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota, en virtud de la cual se obliga a responder por la carga económica que recaiga sobre el asegurado, en el caso de que ocurra algún evento especificado en el contrato". *Feliciano Aguayo v. MAPFRE,* supra, pág. 149; *ECP Incorporated, v. OCS,* 205 DPR 268, 278 (2020); *Savary et al. v. Mun. Fajardo et al.,* 198 DPR 1014, 1023 (2017). Así, los contratos de seguros tienen como característica esencial la obligación del asegurador de indemnizar al asegurado. *Feliciano Aguayo v. MAPFRE,* supra; *OCS v. CODEPOLA, Inc.,* 202 DPR 842, 859 (2019).

Cuando ocurra el evento incierto especificado en el contrato de seguro, "el asegurado debe presentar su reclamación y la aseguradora está obligada a resolverla". *Feliciano Aguayo v. MAPFRE,* supra, pág. 151. Sobre este particular, el Artículo 27.162 del Código de Seguros, *supra,* establece que la aseguradora deberá realizar la investigación, el ajuste y la resolución de la reclamación en el periodo razonablemente más corto dentro de noventa (90) días después del reclamo. 26 LPRA sec. 2716b; *Feliciano Aguayo v. MAPFRE,* supra, págs. 151-152. Es de esta disposición que surge la obligación de las aseguradoras de producir el ajuste de la reclamación. 26 LPRA sec. 2716b; *Carpets & Rugs v. Tropical Reps,* supra. En cuanto a la investigación, la misma se debe desarrollar

de una forma diligente. Ante ello, dicha investigación debe incluir, entre otros aspectos, los siguientes:

> 1) determinar si el evento damnificador ocurrió durante la vigencia de la póliza; 2) determinar si el asegurado reclamante tenía un interés asegurable; 3) determinar si la propiedad damnificada es aquella descrita en las declaraciones; 4) confirmar si las pérdidas reclamadas no están sujetas a exclusiones de riesgo; e 5) investigar si el daño fue causado por negligencia de un tercero, de modo tal que el asegurador pueda subrogarse en los derechos de resarcimiento de su asegurado.

*Carpets & Rugs v. Tropical Reps*, supra, pág. 634.

Ahora bien, cuando por mandato de ley, una aseguradora realiza el ajuste de la reclamación, el documento será interpretado como un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas en el mismo. *Feliciano Aguayo v. MAPFRE,* supra, págs. 164-165. Esto dado a que:

> [a]l emitir dicho documento, el asegurador está informando que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, y un estudio realizado por su ajustador de reclamaciones, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación.

*Carpets & Rugs v. Tropical Reps*, supra, pág. 635.

Así, el ajuste de la reclamación, en cuanto a las cuantías de daños identificadas en este, constituye un reconocimiento de deuda y no se trata de una oferta de transacción producto de una controversia *bona fide*, ni de una deuda ilíquida. *Feliciano Aguayo v. MAPFRE,* supra, pág. 165. Por esto, destaca el más Alto Foro que en el ajuste de la reclamación "no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta según la póliza. Por ende, al emitir el informe de ajuste, no hay una controversia *bona fide* entre el asegurador y

asegurado". *Íd.* Es por ello que, el Tribunal Supremo ha dictaminado que "a un asegurador no se le permite retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente". *Carpets & Rugs v. Tropical Reps*, supra, pág. 635. De esta forma, a un asegurador no le es permisible, ante un reclamo judicial de su asegurado, denegar partidas que en su ajuste inicial entendió procedentes, en ausencia de fraude u otras circunstancias extraordinarias que lo ameriten. *Íd,* a la pág. 636.

### C

El Artículo 1123 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3173,[2] dispone, en lo pertinente, que "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor y hacer el deudor el pago de la primera sin esperar a que se liquide la segunda". Una deuda líquida es aquella que la cuantía de dinero debida es cierta y determinada, sobre la cual no existe controversia. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Pagán Fortis v. Garriga*, 88 DPR 279, 283 (1963). Por otro lado, se considerará que una deuda es exigible cuando la obligación no esté sujeta a ninguna causa de nulidad y pueda demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

### D

Finalmente, debido al paso de los fenómenos naturales de Irma y María, se crearon nuevas políticas públicas y se enmendaron algunos artículos del Código de Seguros de Puerto Rico, *supra.* Entre las enmiendas establecidas al Código de Seguros, *supra,* se encuentra la promovida por la Ley 243-2018. La misma, ordenó a

---

[2] Dado a que los hechos de la presente causa acontecieron previo a la aprobación del Código Civil de 2020, dispondremos de la misma al amparo de lo estatuido en el Código Civil de 1930, cuerpo legal vigente al momento de los hechos en controversia.

los aseguradores de seguros de propiedad a emitir pagos parciales a los asegurados, "[e]n cuanto a una o más partidas de las cuales no exista controversia, sin necesidad de esperar a la resolución final de la totalidad de la reclamación". 26 LPRA sec. 2716f. Es meritorio resaltar que, la Ley 243-2018, es de vigencia prospectiva, es decir, posterior a los eventos ocurridos por los huracanes Irma y María. No obstante, la intención legislativa al aprobar la mencionada ley, y con ello al enmendar el Código de Seguros, *supra,* tuvo como base dichos eventos atmosféricos, para mejorar la forma en que las aseguradoras deben responder ante las reclamaciones que se entablan en procesos de catástrofes.  Según la Exposición de Motivos de la referida legislación, "[e]s importante que las aseguradoras respondan con agilidad y prontitud para atender y resolver los reclamos de los asegurados".  Exposición de Motivos, Ley 243-2018. De igual manera, se enfatiza que "[l]a industria de seguros desempeña un rol fundamental en la recuperación de una catástrofe". *Íd.*

Ahora bien, al momento de la ocurrencia de los daños en controversia, estaba en vigor el Reglamento para las Prácticas Desleales en el Ajuste de Reclamaciones de la Oficina del Comisionado de Seguros, Reglamento Núm. 2080 del 6 de abril de 1976.  En lo pertinente, en su Artículo 7 reza como sigue:

> Artículo 7. Métodos para un ajuste rápido y equitativo
>
> (a)     En cualquier caso en el cual no exista una controversia en cuanto a la cubierta, será deber de todo asegurador ofrecer al reclamante aquellas cantidades que dentro de los límites de la póliza sean justas y razonables y que además de la investigación practicada por el asegurador surge que la cantidad reclamada es justa y razonable.
>
> […]
>
> (d)     En todo caso en el cual no exista controversia sobre uno o varios aspectos de la reclamación, se deberá hacer el pago

correspondiente, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación, siempre que el mismo se pueda efectuar sin perjuicio de ambas partes.

**III**

En la presente causa, la parte peticionaria plantea que el Tribunal de Primera Instancia erró al denegar su *Moción de Sentencia Sumaria Parcial* en cuanto al pago parcial de la cuantía del ajuste emitido por la aseguradora. En esencia, sostiene que el foro de origen tuvo ante sí elementos suficientes para determinar que la aseguradora emitió un ajuste por los daños cubiertos bajo la póliza, por la suma de $309,384.33, y que, conforme a la normativa y la jurisprudencia aplicable, dicho ajuste era líquido, vencible y exigible, sin que la falta de aceptación por parte de la parte peticionaria afectara su carácter de suma líquida.

De igual forma, la parte peticionaria sostiene que el Tribunal de Primera Instancia erró al entender que no procedía aplicar la normativa que impide a la aseguradora retractarse de un ajuste previamente emitido. Alega que dicho ajuste provino del informe pericial del propio experto de la aseguradora, resultado de un proceso de investigación y ajuste realizado por la misma, por lo que la aseguradora no podía ahora cuestionar su validez para evitar el pago. Por último, aduce que el foro *a quo* erró al considerar que la naturaleza del presente caso es distinta a la resuelta en *Carpets & Rugs v. Tropical Reps*, supra, cuando – según afirma – dicho precedente resulta plenamente aplicable a los hechos de autos.

Al entender sobre el expediente apelativo sometido a nuestra consideración, concluimos que, en efecto, Mapfre está obligada a desembolsar el pago correspondiente de la cantidad que notificó mediante el ajuste de daños cursado el 17 de abril de 2023. Es un hecho incontrovertido que Mapfre expidió una póliza de seguro a favor de la parte peticionaria, la cual, según establecido, se

encontraba vigente al momento del paso del Huracán María por Puerto Rico. De este modo, Mapfre tenía un deber estatutario de resolver la reclamación contra la póliza promovida por la parte peticionaria. Igualmente, tampoco existe controversia en cuanto a que Mapfre efectuó un ajuste por la cantidad neta de $309,384.33, como parte de sus responsabilidades, según consagradas en el Código de Seguros, *supra*. Por tanto, al notificar el ajuste, no solo asintió a la legitimidad de la reclamación, sino que, también, reconoció adeudar a la parte peticionaria la cantidad ofrecida en el mismo.

La exigibilidad de dicho deber está plenamente sustentada por el estado de derecho actual en la materia que atendemos. Según antes esbozado, la Opinión emitida por nuestro más Alto Foro en *Carpets & Rugs v. Tropical Reps*, supra, reitera que, al realizarse un ajuste, el mismo simboliza la postura institucional de la aseguradora con relación a la reclamación que se entabla, e indica la procedencia de la reclamación y la existencia de la cubierta bajo la póliza. Ante ello, y como regla general, la aseguradora no puede retractarse del ajuste notificado. Por tanto, no existe fundamento expreso en *Carpets & Rugs v. Tropical Reps*, que nos aparte de la interpretación dada por el del Foro de Instancia. En ausencia de las condiciones de excepción previamente dispuestas, ante una reclamación judicial contra una póliza, una compañía aseguradora está impedida de denegar aquellas partidas que, mediante su ajuste inicial, entendió procedentes. Así, al amparo de tal norma, ciertamente Mapfre no puede negarse a reconocer el derecho de la parte peticionaria, ello en cuanto al recobro de la suma aquí en controversia.

En cuanto al tercer señalamiento de error, este último no fue sometido ante la consideración de los foros anteriores, por lo que es un señalamiento de error "nuevo" traído por primera vez ante esta

Curia. Siendo ello así, aplica la norma de derecho que establece que un tribunal apelativo está impedido de considerar un planteamiento formulado por primera vez en apelación o revisión. Por tanto, no podemos revisar un error imputado al Tribunal de Primera Instancia sobre un planteamiento que nunca le fue presentado ni formulado. En consecuencia, no consideraremos este error. Su petición deberá hacerla ante el Foro de Instancia. Véase, *Vera v. Dr. Bravo*, supra, pág. 335 y *Ortiz Torres v. K&A Developers, Inc.*, 136 DPR 192, 202 (1994).

**IV**

Por los fundamentos que anteceden, se *expide* el recurso de *certiorari* solicitado y se revoca la determinación recurrida, para ordenar el pago por la cantidad de $309,384.33, notificada mediante el ajuste de daños cursado el 17 de abril de 2023. En consecuencia, se deja sin efecto la paralización de los procedimientos decretada por este Foro mediante *Resolución* del 29 de mayo de 2025 y se ordena la continuación de los mismos, de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones